SWEENEY, Respondent, *v.* MONTANA CENTRAL RAILWAY COMPANY, Appellant.

(No. 1,326.)

(Submitted April 18, 1901.   Decided August 1, 1901.)

*Trespass—Diverting Water Course — Release of Damages—Repairing Injury—Evidence—Appeal—Former Opinion—Questions Decided—Ex Parte Order—Instructions—Briefs.*

1.  Defendant railway company entered on plaintiff's mining claim, and diverted the waters of a creek which crossed the claim. Afterwards plain-

tiff conveyed to defendant a 40-foot strip across his claim, and across the old bed of the creek, and released "all claim for any damages that may arise or be caused to the land adjoining such railroad, on either side thereof, in consequence of the use of said premises for its said road." *Held,* that such conveyance did not release plaintiff's claim for damages for the trespass previously committed in diverting the creek.

2. In an action for trespass and diverting a stream crossing plaintiff's land, defendant should be permitted to show what it would cost to restore the stream to its former channel, as the measure of damages would be the expense of such restoration and such other damages as could not be avoided.

3. Where, in the opinion on a former appeal, the court said that they would treat only those points which appellant had taken up on his oral argument, and closed with the remark that "we have considered and treated all the errors assigned which we consider material," such decision should not be deemed as determining any questions in the case other than those discussed in the opinion.

4. In an action for injuries caused by diversion of a stream, evidence that plaintiff, by a small expense in riprapping the bank of the new channel, could have avoided or diminished the damages to his property, was admissible, it being his duty to use reasonable care to save it from injury.

5. One is not, as a rule, expected to enter upon a third party's premises to save his own property from increased injury resulting from the wrong act of another; but it is not unreasonable to expect an injured party to go upon a vacant, uninclosed and unoccupied mining claim to prevent serious damage, in a great emergency.

6. Where a railroad company commenced condemnation proceedings to acquire a right of way across plaintiff's land, and procured an *ex parte* order permitting it to take possession of the land without payment, and staying all actions and proceedings against it, such order was void, and any entry on plaintiff's land thereunder was a trespass.

7. It is not error for the court to refuse to give a requested instruction which contains a statement of an alleged fact which it is within the province of the jury to find or not, according as they may or may not believe the witnesses upon the point.

8. An assigned error which is not argued in the briefs will not be considered.

9. Where, in an action to recover for permanent injury to land occasioned by a trespass, a witness is questioned as to the value of adjoining land, and a map is used, and land inquired about is pointed out to the jury by counsel, the receipt of such testimony is not error, since, as the jury saw the map at the time counsel was pointing out the ground, the supreme court cannot say that the jury did not understand the situation; though this method of introducing evidence is not to be approved.

10. In an action for trespass and permanent injury to land, it was error to receive testimony of plaintiff and another as to what was offered for a strip across the land for a railroad, where there was no evidence that the one making the offer was agent of the railroad company, or had any authority to make the offer.

11. Where land has been permanently injured by a trespass, witnesses familiar with it, and with the uses to which it could be put, may give their opinion of its market value, in view of such uses, though it may not have been previously used for such purposes.

Mr. Justice Pigott dissenting in part.

*Appeal from District Court, Cascade County; J. B. Leslie, Judge.*

ACTION by Patrick Sweeney against the Montana Central . Railway Company. From a judgment for plaintiff and from an order denying a new trial defendant appeals. Reversed.

## STATEMENT OF THE CASE.

This cause is on appeal from the order of the district court denying a motion for a new trial and from the judgment for plaintiff.

The action is for damages resulting from trespass. Plaintiff, in 1891, was the owner, by virtue of a mineral location, of a tract of land called the "Nellie L. Claim," at Neihart, Cascade county. In that year the defendant company started condemnation proceedings in the district court to condemn a strip of ground eighty feet wide across the claim. Without paying or tendering to the plaintiff or any one any money or other consideration, and without paying into court anything at all, an order was obtained by the company admitting it to possession of the property sought to be condemned, and providing, among other things, that during the pendency and until the conclusion of the proceedings all actions and proceedings against the plaintiff on account thereof "be, and the same are hereby, stayed."

Belt creek at the time passed through the claim, as well as through other pieces of property belonging to other persons. The company, under the order mentioned, went upon the plaintiff's land, and excavated a new channel for the creek, and by means of a dam built in the creek, on what was known as the "Graham & Hollowbush Claim," a short distance from and above plaintiff's land, diverted the waters into the new channel. This work was completed about November 1, 1891. Plaintiff entered the claim at the United States land office on December 28, 1891. The village of Neihart was incorporated on December 4, 1891. On the 2d day of January, 1892, plaintiff conveyed his claim to one Condon. It is understood between the parties that this deed was for the purpose of procuring a better

price for the eighty-foot strip from the commissioners in the condemnation proceeding, as plaintiff's relations with one of them were not as friendly as were those of Condon, the deed being in fact in trust for the plaintiff. On March 24, 1892, Condon conveyed, acting for plaintiff and with his advice and consent, a forty-foot strip of the said claim to the railway company, in fee, to be used as a way for railroad purposes, such strip embracing only a very small corner of the eighty-foot strip. After the deed was made, the company abandoned the condemnation proceedings, and notified plaintiff of such abandonment. After the delivery of the deed for the forty-foot strip, Condon reconveyed the remainder of the land to plaintiff.

Plaintiff contends that the order made permitting defendant to enter the land was void, and that the entry, the digging of the new channel on his land, and the turning of the water into it, were a trespass, and operated to materially lessen the market value of the property. Defendant, in the brief of former counsel, claims that, though the act of changing the course of the stream was originally a trespass, no action can be maintained for damages on account thereof, by reason of the fact, as counsel says, that the plaintiff, through his trustee, Condon, ratified and adopted defendant's acts, took the benefit thereof, and received from defendant compensation on account thereof, by selling and conveying to defendant the forty-foot strip, extending, as it does, across the old channel, without reserving a right to return the creek to the old bed, and, further, that the plaintiff is by the deed estopped from claiming damages. The deed contained the following: "And said first party hereby releases to said second party any and all claim for any damages that may arise or be caused to the land adjoining such railroad, on either side thereof, in consequence of the use of said premises for its said road."

This case was heard and decided upon a former appeal, being reversed, a statement of the case being made in the opinion. (19 Mont. 163, 47 Pac. 791.)

The principal questions arising upon the present appeal

relate to the correctness of certain rulings of the court upon the admissibility of evidence, the refusal of the court to grant a nonsuit or direct a verdict for the defendant, and upon certain instructions given and others refused.

Present counsel for defendant, in oral argument and in his brief, very ably contends that the order was not void, for that the owner waived the right to exact prepayment for damages, and that the complaint does not state a cause of action in trespass *quare clausum fregit,* and is fatally defective, for the reason that it does not show forth that defendant's entry was wrongful. He claims that defendant owner, in the condemnation proceedings waived his constitutional right to demand compensation before the company took possession under the order of the court, by failing to make seasonable demand for it, and by his appearing and answering in the condemnation proceedings.

The order of the court, permitting the company to enter upon the land, was made *ex parte,* and without notice.

*Mr. A. J. Shores* and *Mr. I. Parker Veazey,* for Appellant.

*Mr. Thomas E. Brady, Mr. M. S. Gunn, Mr. John B. Clayberg* and *Mr. N. W. McConnell,* for Respondent.

MR. JUSTICE MILBURN, after stating the case, delivered the opinion of the Court.

The appellant makes twenty-one assignments of error. We shall consider only those depended upon in the argument of appellant's counsel.

During the trial, at the close of the testimony for the plaintiff, the defendant moved the court "that the action be dismissed on the ground that by the sale and conveyance to the defendant of the 40-foot strip of ground for a right of way across the Nellie L. lode claim, shown by the evidence to have been sold and conveyed, the plaintiff is estopped from making any claim for damages done, if any were sustained, by the

change in the course of the stream, and that the execution and delivery of such conveyance operated to destroy any right of action for the previous trespass, if any such existed." The motion was denied and defendant excepted.

Did the making and delivery of this deed, or the waiver of damages expressed therein, estop the plaintiff to the extent claimed by defendant? We think not. More than one-half of the argument in appellant's brief is upon the subject of the said conveyance and its effect upon plaintiff's case. The argument is made with that close and able reasoning which characterizes counsel, but, in our opinion, it proceeds upon a theory which does not apply to the facts or the law of this case. Counsel cites *Roberts* v. *Roberts,* 55 N. Y. 275; *Lampman* v. *Milks,* 21 N. Y. 506; *McCarty* v. *Railroad Co.,* 31 Minn. 228, 17 N. W. 616; *Radke* v. *Railway Co.,* 41 Minn. 350, 43 N. W. 6; *McDonald* v. *Railway Co.,* 101 Cal. 206, 35 Pac. 643. We do not find any of these in point. In *Roberts* v. *Roberts* it was the owner of the land who had permanently changed its condition by effecting an advantage to one part and burdening another, and the court held that upon a severance the respective owners held the land according to such changed conditions, there being, of course, no damage ever done by any one to the said owner. In reason and justice, and upon old and very respectable precedents, which have always been cited with approbation (see opinion in *Lampman* v. *Milks, supra*), the court was correct. The difference between the case at bar and that of *McCarty* v. *Railway Co.* is that the latter was a suit for damages for obstructing the flow of water by a railway embankment for the building and maintenance of which plaintiff had sold a certain strip of land,—the case at bar, one for completed trespass committed on another part of the land, a considerable time before the conveyance of the strip across the old channel. In *Radke* v. *Railway Co.* the court held that no right of action lay for damages subsequently caused by a bad culvert in the railway embankment built upon land entered upon by the railway company without right, but subsequently

conveyed by the owner to the company with the bad culvert then in said embankment. In *McDonald* v. *Railway Co.* the owner by deed conveyed to the company a right of way for the track "as the same is now located, constructed and operated," and expressly waived all damages by reason of the construction and operation of the same, and acknowledged "payment for damages for any injury caused by the construction of said railroad in front of his property" on a certain street; the suit being for damages resulting from an overflow of plaintiff's property caused by a certain bridge which choked the channel of a stream of water, the bridge being the same that was on the right of way at the time of the conveyance to the railway company.

The suit in the case at bar is for damages recoverable for trespass upon a relatively large tract of land, part of which was afterwards conveyed to the defendant, the trespass being complete as of November 1, 1891, before the making and delivery of the deed of conveyance for the part. The deed to the defendant company must be considered exactly as if it had been to a third party, a stranger to the trespass. It conveyed part of a tract alleged by the plaintiff to be then damaged land. The chose in action in trespass was not conveyed any more than if the deed had been made to a stranger. The waiver of damages set forth in the instrument of conveyance is obviously and manifestly for such damages as might come from the use of the strip as a way for the road. If it was intended to say that the company was released from all claim for damages for trespass resulting from the unlawful entry upon the property of plaintiff when it went upon the premises and dug a large ditch upon another part of the land, it would have been easy to have said so; such a thing would not ordinarily be pertinent to such a deed, and cannot be read into it by us.

We are of the opinion that just as the deed, if made to a stranger, would have estopped the owner of the land from turning the stream again across the ceded strip, so, also, it would do after conveyance to the railway company; but the right to sue accrued at the time of the completed trespass, November

1, 1891, before the sale of the strip of damaged land. The question, "Did the deed estop claim for damages accruing when the trespass was complete?" is a far different question from, "Did the deed operate as a waiver of the right to return the stream to the old bed, and thus to mitigate damages?"

There is nothing in the evidence to show that a larger price was demanded or received by the owner, or offered by the company, in consideration of the strip of land being at the time free from the burden of Belt creek, or to show that this particular part of the damaged tract of land was worth more or less because of the removal of the creek to the new channel.

The deed estopped plaintiff from returning the stream to the old bed after the delivery of the deed, but did not operate as a waiver of proper damages resulting from the completed trespass.

The defendant complains of the court's refusal to admit evidence as to the probable cost of returning the stream to its old channel, and restoring the premises to substantially the condition in which they were prior to the trespass. Notwithstanding the earnest and full argument of counsel for defendant in his brief, contending that the deed estopped plaintiff from claiming any damages, measured by the cost of such restoration of the premises, or at all, he forcibly argues that evidence of such cost should have gone to the jury. We agree with counsel that this evidence should not have been excluded. Upon the former appeal (19 Mont. 163, 47 Pac. 791) it was held that the refusal of the court below to allow evidence to show that plaintiff, by an expense of $100 in riprapping the bank of the new channel between the stream and the bluff on the land in question, could have avoided or diminished the damages to the mining claim, was error. To hold, in the face of this declaration, that plaintiff was estopped by deed from claiming damages, would be to reverse the judgment of this court as to a conclusion which is part of the established law of this case. The opinion in the case on the former appeal supports fully the proposition that, in cases of tort, such as the one at bar, it

is not only the privilege, but the duty, of the injured party to use reasonable care, skill and diligence, adapted to the occasion, to save his property from being injured; otherwise, it would not have held the evidence as to the cost of riprapping as admissible.

Mr. Justice Brewer, in *Kansas Pac. Railway Co.* v. *Mihlman*, 17 Kan. 224, collating and considering the numerous authorities supporting him, says: "The proposition is sound that, while a wrongdoer should compensate for all the injury naturally and fairly resulting from his wrong, yet the party upon whom the wrong is done should take reasonable care of his property, and make reasonable effort to prevent any extension of the injury. If a party can, with reasonable effort, prevent an injury from spreading, he ought to do it. It is no more than simple justice to the party who has caused the injury, especially if that party has acted without malice, and without a thought of causing injury." In *Loker* v. *Damon*, 17 Pick. 284, cited by our court in the former appeal of this cause, the court, through the learned Chief Justice Shaw, said: "We think the jury were rightly instructed that, as the trespass consisted in removing a few rods of fence, the proper measure of damage was the cost of repairing it, and not the loss of a subsequent year's crop, arising from the want of such fence;" and in the case before Justice Brewer, *supra,* he held for the court that the question ought to have been submitted to the jury whether Mihlman could not, with reasonable effort and small expense, have filled up the ditches, repaired the wrong done by the company, and prevented any destruction of his crops, or depreciation of the value of his real estate, and that the jury should have been instructed that, if this were so, the measure of damages would not be the value of the crops destroyed, but the cost of filling the ditches and placing the land in the condition it was before the trespass, together with the value of the direct injury done by the trespass.

It was held on the former appeal of this case that the trespass was a completed trespass, and not a continuous one; that

"the sole liability of the defendant company was determined and fixed by the trespass which wrought the difference in the market value of the land before and after its commission, in November, 1891." What was the position in which plaintiff found himself after the defendant committed the trespass? If his land was injured, what was the measure of the damages? If he could reasonably and at moderate expense have riprapped the stream, if this would have obviated the damage or prevented increase of the injury, or if he could have, by expenditure of a sum reasonably within his means and warranted by the circumstances, returned the stream to its old bed, and filled up the excavation, if this would have avoided or materially diminished the damages, then one or the other of these methods he should have adopted, and the expense would be the measure, with such accrued damages as could not be avoided by the means adopted. If, for good and sufficient reason, he could not adopt and execute either method, then, the measure of damages being the difference between the value of the land before and just after the complete trespass, he would, in estimating the value of the land after the trespass, with other things, consider the nature of the stream, the size and condition of the ditch, and the probability of overflow of his land. Thus we may fully understand the holding of the court on the other appeal that it was not error to admit evidence on the first trial as to the overflows and wasting away of the land after the date of the trespass complained of, for the purpose of showing the difference in the market value of the land before and after the trespass, but that it was error not to limit the evidence to that purpose, as the defendant requested the court below to do.

We are of the opinion that the court should have permitted the jury to consider, among other circumstances appearing in evidence, what the cost would have been to avoid the damages, in whole or in part. If such efforts to avoid increased damages were such as the plaintiff could reasonably undertake and perform, and such as would have avoided the overflow, then no evidence, under proper instructions, as to overflows would have

been considered by the jury in measuring the damages. If, after weighing the evidence, the jury, under proper instructions, considered that the plaintiff could not have reasonably undertaken any method to protect or restore the land or prevent the floods, then the evidence as to the floods, if the result of the trespass, would be proper to consider for the purpose of finding the difference in the market value of the land before and after the trespass.

Respondent's counsel maintains in his brief that the question of the alleged error of the court in excluding the proffered evidence as to the cost of returning the stream into its old channel, and filling up of the new, is not before this court for determination, for the reason that the question was decided on the former appeal. Judge Pemberton, then chief justice, in the opinion, without especially referring to the point which we are now referring to, said: "We have considered and treated all the errors assigned which we consider material." This remark must be weighed in connection with the declaration in the first part of the opinion to the effect that the opinion would treat only of those points which appellant had taken up in his oral argument. We cannot, therefore, believe that, upon fair construction of the remarks of the chief justice depended upon by respondent's counsel, they should be considered as meaning anything more than that it was not necessary, for the determination of the case, to treat of other points.

Counsel for respondent argues that the plaintiff had the privilege, but that it was not his duty, to do anything to reduce or avoid the damages likely to follow. In support of his contention he refers us to *Jarvis* v. *Railway Co.*, 26 Mo. App. 253, and from the citation we quote thus much: "The contention is that he [plaintiff] was bound to go and abate the nuisance created by the defendant, *since the law allows a private person to abate a nuisance where it can be done without committing a breach of the peace.* [Italics not in the opinion.] Undoubtedly it was the plaintiff's *privilege* to abate this nuisance at his own expense; but it does not lie in the mouth of

the author of the nuisance to say that he was bound to do it."
A citation is also made from *Paddock* v. *Somes,* 102 Mo. 238,
14 S. W. 746, 10 L. R. A. 254, from which we take the follow-
ing: "It is the duty of every person or public body to prevent
a nuisance, and the fact that the person injured could, but does
not, prevent damages to his property therefrom, is no defense
either to an action at law or in equity. A party is not bound
to expend a dollar or to do any act to secure for himself the
exercise or enjoyment of a legal right of which he is deprived
by reason of the wrongful acts of another." From *Heaney* v.
*Heaney,* 2 Denio, 625, respondent's counsel cites this sentence:
"The injury complained of was voluntary, and, if wrongful,
the plaintiffs were under no obligation, legal or moral, to take
any steps to mitigate the consequences to the defendants." He
also calls attention to the following from *French* v. *Lumber
Co.,* 145 Mass. 265, 14 N. E. 113: "The court properly re-
fused to rule that plaintiff could recover only for what he had
expended in removing the obstructions. It did not appear that
it was possible for the plaintiff to have removed them. Cer-
tainly he owed no duty to the defendant to remove the logs and
sand with which the defendant continued to obstruct the river."
He finds, also, that in *White* v. *Chapin,* 102 Mass. 138, the
court held that plaintiff was not under the necessity of seeking
any part of his remedy by going upon the defendant's land and
abating the nuisance caused by obstructions which defendant
had there placed in the ditch, but that he had a right to elect
his remedy by an action at law.

It is useful to note, in the case from Denio, in which such
broad language is used, that defendants in 1846 cut a vessel
loose from the wharf, and that plaintiff, the owner, stood by
and watched it go to wreck against Staten Island, when, before
it had floated far, he might have overtaken it with a boat and
brought it back, at a moderate expense; and, further, that plain-
tiff made no effort to recover or save the vessel. It seems to
us as unnecessary in this enlightened century to say that the
damage to the boat was the direct and natural result of the

revengeful spirit of the owner of the boat, and not of the act of the defendant.

A logical deduction to be drawn from, and entirely within the scope and meaning of, the citations is this: If A. go into B.'s house, and remove therefrom very valuable and perishable property, which will be destroyed by exposure to the weather, and deposit the same upon the vacant and uninclosed desert claim of C., then, although A. has the privilege to go upon the land of C. to recover his property, if he can do so without a breach of the peace, he is under no obligation to do so, although he can with only the expenditure of sixty seconds of time, and by a walk of ten yards, pick up the imperiled property, and put it back into the house. Would any court uphold a verdict of, say, $1,000 damages for the loss of a valuable painting destroyed by storm under such circumstances, although A. maliciously removed the picture and exposed it with intent to destroy it? We think not. *A fortiori,* if the act was done in a fit of frivolity, without intention to destroy the property. Is it not a question for the jury to determine what reason required of the owner to do? Whatever reason requires a man to do should be done, if the law does not forbid. What is just and what reason demands must be one's duty under the law, unless the law of the land forbids.

As expressing our views, and as opposed to those cited by respondent's counsel, we quote the following—one or more of them being from courts of states from which one or more of the authorities of respondent are taken: "Aggravation of injuries by subsequent negligent conduct on the part of plaintiff may be considered by the jury in mitigation of damages." (*Fullerton* v. *Fordyce,* 144 Mo. at page 533, 44 S. W., at page 1056.) "For the direct and consequential damages caused by an injury the party committing it is responsible, but not for remote, speculative and contingent consequences, which he might have easily averted by his own exertions. The law will not reward a man for the indulgence of his malice. If a party sustaining an injury by the act of another can protect himself

by a trifling expense, or with reasonable exertions, from the consequences, he fails in social duty if he omits to do so, regardless of the increased amount of damages for which he may intend to hold the other party liable." (*Douglass* v. *Stephens,* 18 Mo., at page 366.) "If a party can, by a trifling expense or by reasonable exertions, avert the damages caused by the wrongful act of another, it is his duty to do so; and, if he fails in performing the full measure of his duty in this regard, he will be only entitled to recover such damages as were not the result of his negligence or omission." (*Waters* v. *Brown,* 44 Mo., at page 303.) "It is now well settled that one who is injured by another has no right to lie by and suffer damages to accumulate which it is in his power to prevent. He must use proper diligence to prevent or arrest the effect of the injury. Whatever he voluntarily suffers, which by reasonable exertion he may avoid, he must charge to his own account." (*State ex rel. Rice* v. *Powell,* 44 Mo., at page 440.) "It is the duty of a party to protect himself from the injurious consequences of the wrongful act of another, if he can do so by ordinary effort and care and at moderate expense." (*Harrison* v. *Railway Co.,* 88 Mo., at page 627.) "After the wrong was committed, it was certainly the duty of the appellee to avoid the consequences of that wrong, as far as he reasonably could. If by labor, or a reasonable outlay of money, he could have stayed or avoided the consequences of the appellant's wrong, he should have done so. All consequences resulting from his own willful failure or gross neglect to use timely and reasonable precaution to prevent an extension or increase of the injury should fall upon himself." (*Lawson* v. *Price,* 45 Md., at page 136.) "As it is the duty of a party injured by a breach of contract or tort to make reasonable effort to avoid damages therefrom, such damages as might by reasonable diligence on his part have been avoided are not to be regarded as the natural and probable result of the defendant's acts. There can be no recovery, therefore, for damages which might have been prevented by reasonable efforts on the part of the person injured." (*Scherrer* v.

*Baltzer,* 84 Ill. App. 128; 8 Am. & Eng. Enc. Law (2d Ed.) p. 605, and numerous cases cited.) See, also, Judge Brewer's views in *Kansas Pac. Railway Co.* v. *Mihlman, supra;* Suth. Dam. (1884) pp. 414-416; and Sedg. Meas. Dam. (1891) Sec. 202.

The defendant offered upon the trial to prove that by an expenditure of $350 the plaintiff could have removed the dam, thus returning the water into the old channel immediately after the trespass, and have filled the excavation made upon his premises, thus restoring the premises to their former condition. It would have been for the jury to determine, in the light of all the facts in the case, whether or not such undertaking and expense would have been reasonable and within the means of the plaintiff. Of course, the plaintiff would not have been called upon to embarrass himself financially or to do anything unreasonable or unlawful in the premises. The evidence should have been admitted, and the plaintiff would then have had the opportunity to show, if he desired, that such undertaking on his part was not reasonably within his power or means to accomplish, and, if the jury believed that such was the case, then they would not have been warranted in finding that it was his duty to have taken these steps to restore his premises to their former condition and to prevent the increase of damages.

One is not, as a rule, expected to enter or go upon a third party's premises to save his own property from increased injury resulting from the wrong act of another. If the dam in question was on a vacant, uninclosed and unoccupied mining location, upon which and over which, by a well-known custom in this state, people are permitted to camp, go, travel and do other things not hurtful to the premises, it would not be unreasonable to expect an injured party to go upon such open land to prevent serious damage, in a great emergency.

The order of the district judge, purporting to give the railway company authority to enter the lands of the plaintiff, to do as it did do for the purpose of a right of way, was void. It

is not necessary for us to go into this at length. The order being void, the entry was a trespass, as is conceded by counsel.

The defendant upon the trial prayed the court to give the following instruction: "I further instruct you that after defendant had entered upon the land in question in the month of October, 1891, and dug a trench across the same, and changed the course of Belt creek, the plaintiff has the right to have the stream returned to its original channel, and could have compelled a return of the same. In considering the extent to which the land was depreciated in value, if at all, by this change, it is proper matter for your consideration that the change was not necessarily permanent in character, and that the plaintiff was under no obligation to let the stream remain in the new channel, although he might, if he saw fit, elect to let it stay there." In the light of what we have said herein, we hold that the refusal to give this instruction was error.

The court also declined to give the following instruction, asked for by the defendant: "The point at which the water was diverted from the original channel and the dam so constructed was not upon the land owned by plaintiff, but the same was vacant, unoccupied, uninclosed land; and it would not have been a trespass, in law, for the plaintiff, after the construction of said dam, for himself to have gone and removed the same, and turned the waters into the old channel of Belt creek, if he considered that his land would be seriously or substantially diminished in value by permitting the stream to remain in the new channel." While, under the uncontradicted evidence in the case as to the open and vacant character of the land where the dam was, the granting of the instruction might not, perhaps, have been error, it was not error to refuse to give it, as it contains a statement of an alleged fact which it was within the province of the jury to find or not, according as they may or may not have believed the witnesses upon the point.

The refusal of the court to give defendant's requested instruction numbered 13 is also assigned as error; but, as the principal point therein, to-wit, the question of plaintiff's right

to bring and maintain an action against the persons owning the land where the dam was located, to compel them to permit the restoration of the creek to the old bed, is not argued in the briefs, such alleged error will not be considered by us.

We come now to a consideration of the assignments of error as to admission of evidence of value. Plaintiff in his own behalf testified: "I understand that those lots were held at $450 below." Objection was made to the numerous interrogatories upon which the answer was based, the ground of objection being that the questions were immaterial and incompetent, and that no foundation was laid showing that the witness had any knowledge of the lots, and that there was no evidence that any lots were "platted there." Upon the court's inquiry, "In the vicinity of the land in question?" counsel for plaintiff answered, "Yes, sir," whereupon the court overruled the objection. There was no objection made to the interjection of the inquiry or answer. Examination of the record shows that the vice of pointing out to the jury places on the map, and asking questions about "property that is hereabout numbered 11 or 10, immediately west of it" on the map, which map was seen by the jury, was indulged in, fixing the locality of the lots said to be worth "$450 below." The testimony had a tendency to fix some value to the land, and, as the jury saw the map at the time that counsel was pointing out the ground in question, we cannot say that they did not understand the situation. While not approving this manner of introducing evidence, we cannot say that the court erred in letting it go to the jury for what it was worth.

The court erred in overruling defendant's objection to the introduction of the evidence of plaintiff and of witness Coudon as to what had been offered them, respectively, by one Scott, said by the witnesses to be the right of way agent of defendant railway company, for the eighty-foot strip which was sought to be condemned. It appears that Scott offered them, respectively, $4,000 and $3,500 for the said strip. There is nothing to show that the right of way agent had any authority from any one

to make such offer, or that the company ever heard of the offer. It is certain that the company never adopted the offer or carried it out, for it abandoned the condemnation proceedings. The single case cited by counsel in support of the admission of the evidence is one in which one or more of the owners expressly told another person to "go ahead" and make a certain sale, thus establishing agency. This is a far different case from the one at bar as to agency.

The alleged error of the court in overruling defendant's objection to the question put to Condon as to instructions given him by Sweeney with respect to making the deed, and as to Sweeney having told Condon not to waive any damages, need not be considered, for the reason that there is nothing in the deed as to waiver of the damages sued for, and, further, this matter of waiver has been sufficiently covered herein.

Defendant objected to any evidence as to the value of the property for townsite purposes, on the ground that the property could not be considered as platted property or platted into lots, for the reason that it was not in fact platted, and that Madison street was not in fact extended through it at that time, and that the property was not capable of being platted and sold, owing to the fact that plaintiff did not then have title to it, as appears from the evidence, and that "plaintiff's right was only then a location notice upon which a receiver's receipt had not yet been issued," and that it was not the proper method of arriving at the value of the land to consider it in the light suggested by this question. The court overruled the objection. It does not appear that it was necessary for the city to extend Madison street in order that the land could be platted for townsite purposes. Why could not the owner have dedicated a street?

Witnesses who knew the property, and were familiar with the uses to which it could be put, could give their opinions as to the market value—and respondent was properly allowed to introduce evidence to prove the value of the land for town-lot purposes. He had the right to make such proof whether he had platted it or built upon it or not. The question was not to what

use the land had been put. The owner has a right to obtain the market value of the land, based upon its availability for the most valuable purposes for which it could be used, whether or not he so used it. (*Montana Ry. Co.* v. *Warren,* 6 Mont. at page 284, 12 Pac. 641, and cases cited; *Northern Pac. & Montana Railway Co.* v. *Forbis,* 15 Mont. 452, 48 Am. St. Rep. 692, 39 Pac. 571.) Mining claims are real estate. (*Butte Hardware Co.* v. *Frank,* 25 Mont. 244, 65 Pac. 1.) From the evidence it appears that the federal government patented the land to plaintiff after an entry made in December, 1891, location having been made on January 1, 1891. The jury probably took into consideration the fact that plaintiff had not "proven up," but that he had "earned" the land, and had a right to a patent, as appears in evidence from the fact that the government issued the patent, which could not lawfully have issued if the owner had not earned it at least as early as November 1, 1891. Besides, he was the owner of the mining claim,—real estate, "property," in every sense of the word,—against all the world, while he was in possession, complying with the law, and performing the conditions precedent to the obtaining of his patent. He had the right to quit, but no one had the right to trespass upon or interfere with his possession, use or enjoyment of the premises, except by due process of law.

Having considered carefully the reasoning of present counsel for appellant in his brief bearing upon the question as to whether or not plaintiff waived his constitutional rights, and that the complaint in this cause does not state a cause of action, we must agree, without further remarks, with the former counsel for respondent, that the complaint does state a cause of action, and that the order was void, as we have hereinbefore stated.

The errors herein declared were prejudicial to defendant, and the order denying the motion for a new trial and the judgment must be reversed.

*Reversed and remanded.*

Mr. Chief Justice Brantly:  I concur.

MR. JUSTICE PIGOTT: I am inclined to the opinion that evidence of an offer to buy, made in good faith, is admissible in favor of the owner of property as tending to prove its value. But the testimony of the plaintiff and Condon touching supposed offers of purchase by the right of way agent was, I think, both hearsay and immaterial. The agent was not acting for himself but assumed to speak for the defendant; there was nothing tending to show authority in him to make any offer in defendant's behalf, and hence it did not appear that either offer was *bona fide*. Not being satisfied that the error in admitting it was without prejudice, I concur in the reversal.

I dissent from the holding that the plaintiff owed to the defendant the legal duty to mitigate damages or lessen the amount thereof by abating or removing the nuisance existing on the land of another.

As to the sufficiency of the complaint: No attack by demurrer or otherwise was made upon it in the court below, where the case was tried upon the theory that a cause of action was stated; the opening brief of counsel for the defendant confessed its sufficiency and expressly admitted that the order under which the defendant entered upon plaintiff's property was void, and not until the oral argument in this court did the defendant suggest that the order was only voidable. Under these circumstances I am of the opinion that the allegations of the complaint and the evidence should be liberally construed and every reasonable intendment indulged in favor of the plaintiff. So regarding the complaint and the evidence, I think the former states a cause of action and the latter supports it.