SUSAN THOMPSON, Appellant, Respondent, *v.* THE FORT MILLER PULP AND PAPER COMPANY, Respondent, Appellant.

Third Department, February 28, 1921.

Waters and watercourses — navigability of Hudson river — dams — overflowing riparian lands — equitable relief denied — backing water into ditches on plaintiff's land technical trespass — excessive damages.

The Hudson river between Washington and Saratoga counties is a navigable stream.

In an action to recover damages for the overflowing of land alleged to have been caused by water backing into ditches on plaintiff's land as a result of a dam in the Hudson river maintained by the defendant, and to abate the dam as a public nuisance and for an injunction restraining the defendant from maintaining the dam at its present height, evidence examined, and *held,* that the maintenance of said dam was not a public nuisance;

That while the dam did not raise the river enough to overflow the bank at plaintiff's land it did raise it enough to back the water into plaintiff's drainage ditches, the bottoms of which were from three to five feet below the top of the bank, and a technical trespass was thereby committed from which the plaintiff suffered some damage.

The privilege accorded to plaintiff to apply at any time at the foot of the judgment for an injunction, upon showing that the ends of justice require it, was all the relief that the plaintiff was entitled to in that regard; it will serve to prevent any adverse or prescriptive right ripening in the defendant.

On all the evidence, *held,* that an award of damages of $2,000 was excessive and should be reduced to $150.

CROSS-APPEALS by the parties, Susan Thompson and The Fort Miller Pulp and Paper Company, from a judgment of

the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Washington on the 7th day of April, 1920, upon the decision of the court rendered after a trial without a jury at a Trial Term of the Supreme Court.

*Rogers & Sawyer* [*Erskine C. Rogers* of counsel], for the plaintiff.

*William S. Ostrander,* for the defendant.

KILEY, J.:

The *locus in quo* of this litigation is in Washington and Saratoga counties in this State, with the Hudson river separating the main parts of the properties involved. The action was commenced in June, 1912. It was tried before the court without a jury and the trial was finished some six or seven years later. As both parties have appealed, for convenience the parties will be referred to as plaintiff and defendant. The defendant is a domestic corporation, and owns and operates a pulp and paper mill at or near Fort Miller, N. Y. This plant is located on the east bank of the Hudson river, at which point it has a dam extending across the river, by means of which dam it impedes the flow of the water, and confines it, releasing it to turn its wheels, thus creating the power used. The river runs practically north and south through and between those properties. Defendant owns real estate on each side of the river against which the ends of the dam abut. The lands on the east side of the river were acquired by defendant and its predecessors some years before the opposite lands on the west side of the river. As early as 1804 defendant's predecessors obtained the right from the State to erect on the east side of the river a wing dam, viz., a dam extending out into the river but not beyond its center line; such dam was built and maintained for several years prior to the year 1882. In the month of July, 1882, the predecessors of defendant acquired the land on the west or opposite side of the river by deed, in and by which rights, other than the fee, were attempted to be conveyed, and were conveyed so far as the grantor had such rights. The recital in the deed for that purpose reads as follows: " The right to build a dam across

said river or any part of it opposite to said farm and to abut
the same against the west bank of said river on said farm and
to keep and maintain the same there forever." After acquiring
the last-mentioned lands, the predecessors of the defendant
extended its dam from the east toward the west to within
twenty or thirty feet of the west shore. Defendant claims
to own the bed of the river between the east and west shore
to the extent of its shore line opposite its real property on either
side. A portion of the claim is based, so far as the east half
of said river is concerned, on the " Schuyler Patent," granted
by King George II of England in 1740; so far as the west half
of said river is concerned, it is based on the " Kayaderosseras
Patent," granted by Queen Anne in 1708. In addition the
defendant claims that as this is above tide water, its rights
as riparian owner carry it to the thread (center) of the stream.
The trial court found that defendant had not acquired title under
either theory. (See 111 Misc. Rep. 477.) For such holding
there is authority aplenty. (*Fulton Light, H. & P. Co.* v. *State
of New York*, 200 N. Y. 400, and cases cited.) In *Danes* v. *State
of New York* (219 N. Y. 67) at page 72 of the opinion the court
says: " The law of New York, as a colony and as a State, has
consistently declared through legislative and judicial decisions
that the rule that the owner of the contiguous bank of a non-
tidal navigable river owns to its center, is not, for certain excep-
tional reasons, applicable to the Mohawk river and parts of
the Hudson river." It is not held here that the beds of
those rivers are not inalienable; I think they are; but the
decision is not necessary to determine the issue involved here.
So without disturbing the finding of the court below in that
regard, attention to the issues as framed by the pleadings
and as finally presented by the evidence will be had. A little
over a mile north of this dam, as it is now and as it was in
1882, is situate plaintiff's farm of about two hundred acres,
about forty acres of which is an island in the Hudson river,
the lower part of which is opposite the north part of said farm.
The plaintiff obtained this farm from her husband with whom
she had resided upon this farm since 1867; he died in 1895.
The trial court found, and upon sufficient evidence, that the
dam, as constructed and maintained, down to 1894, gave no

cause for complaint to other riparian owners. In 1894 and 1895 the defendant repaired its whole dam and reconstructed that portion covered by its purchase of the lands on the westerly side and whatever other rights it acquired by that purchase. The court has found upon evidence sufficient to sustain the finding that the gap of twenty or thirty feet at the extreme west end was closed by a substantial structure and that said dam west of the thread of the river was raised eighteen inches above its former height, eighteen or nineteen years after the plaintiff brought this action. In and by her complaint she alleges that the land was used and occupied by her for agricultural purposes; that erected thereon were a dwelling house and necessary farm buildings; that the dam, as above described, was wrongfully maintained without the consent of herself or her predecessors in title; that as so maintained the dam set back the waters of the river upon about thirty-five acres of her farm and rendered it damp, wet, soggy, marshy and " totally unfit for cultivation;" that dirt and debris were spread over the land; that pools of stagnant water were caused to stand upon the land and around the buildings; that an unsanitary condition was thereby created; that fences were injured, and ditches upon the land were filled and the banks of such ditches were washed out; that the roots of trees were washed bare and the trees toppled and fell and were lost; that her loss in annual rental value was $500; and that the freehold had been damaged to the extent of $1,000; that in the river she owned a valuable dam site, appropriated by the State, which if it was not for the wrongful raising of defendant's dam, would have netted her more money from the State of New York when it made such appropriation; that the Hudson river is a public highway, and finally that the maintenance of said dam by the defendant, as maintained, in the manner complained of by plaintiff, constituted and does still constitute a public nuisance. Defendant denies plaintiff's allegations of damage; and alleges that it has maintained said dam, effective as to backing up water, for the past forty years before the commencement of this action; that for more than twenty years this defendant and its predecessors in title openly and notoriously maintained the dam at the point and on the part complained of (the western

part) at an. equal or greater height than at that time; denies that it maintains a public nuisance, and that the river is a public highway. Upon the issue thus made, plaintiff demands judgment for $4,000 damage, that the nuisance as alleged be abated, and that plaintiff have an injunction preventing the maintenance of the dam at its present elevation. The court held that the Hudson river was navigable, a public highway; such finding is sustained by the facts and the law. (*Danes* v. *State of New York,* 219 N. Y. 67, and cases cited.) I am aware that an apparently different holding can be found. (*Morgan* v. *King,* 35 N. Y. 454.) In that case the question in dispute related to a part of the river that had not been used as a public highway nor so designated; the Hudson had been so used and permitted by the State. The weight of authority is to the effect that it is a public highway. The holding either way does not affect the rights of the parties as I conceive them to be and as they were finally submitted and determined. ( *United P. B. Co.* v. *Iroquois P. & P. Co.,* 226 N. Y. 39.) In *Melker* v. *City of New York* (190 N. Y. 481) at page 488 of the opinion, the court says: " We think that each case must depend on its own facts for classification as a nuisance at law, or in fact, or neither." The trial court did not find that the maintenance of the dam was a public nuisance either in law or fact. Trespass against plaintiff's rights was found; if she suffered any of the damages alleged, she was entitled to such finding. (*Heeg* v. *Licht,* 80 N. Y. 580.) Plaintiff was not entitled to the more harsh finding. (*Fort Plain Bridge Co.* v. *Smith,* 30 N. Y. 44.) The trial court refused a permanent injunction. That is equitable relief. The equitable relief sought by plaintiff in this action is based upon her alleged legal cause of action. That she had a cause of action for something was properly found, viz., for damage. That the amount is on the wrong basis, and excessive, I shall show presently. Having properly found that plaintiff suffered some damage, which was a technical trespass, it does not follow that an injunction should issue. (*McCann* v. *Chasm Power Co.,* 211 N. Y. 301.) The privilege accorded plaintiff, to apply at any time at the foot of the judgment, for an injunction, upon showing that the ends of justice required it, was all the relief plaintiff was entitled to in that regard; it will serve to prevent any adverse

or prescriptive right ripening in the defendant. The opinion of the court below (111 Misc. Rep. 485) says that the damage to the island was covered by an appropriation from the State and does not consider it as an element entering into his award in favor of the plaintiff. As aforesaid this action was commenced in June, 1912. Judgment was entered in April, 1920. Seven years and nine months between the two dates. Add to these figures six years prior to the commencement of the action and you have thirteen years and nine months. In considering the only question of any importance left for consideration, it is well to recall just what the trial court did in that regard. It found as to damage to the freehold as follows: " 12. That the permanent depreciation in value to plaintiff's said farm from the effects of the dam if continued at its present height is $2000." In his opinion the learned judge says this finding is not to be considered effective, should either party elect to disregard it; an examination of the judgment shows that the plaintiff elected to disregard it, and of course the defendant had no intention to take advantage of such finding and could not do so in absence of plaintiff's acquiescence. The judgment is based on the difference of rental value, $1,400, as found by the court. After the eliminations hereinbefore referred to and considered, the rights of these parties are narrowed down to their respective rights as riparian owners. (United P. B. Co. v. Iroquois P. & P. Co., 226 N. Y. 38.) Starting with this premise a consideration of the several parties, their location and situation is necessary. We are referred to no rights given to or acquired by the defendant to overflow any lands that it does not own. The same is true as to the plaintiff. The title to the bed of the stream being in the State, the water flowing over that bed is held by the State for the use of the people as a whole, equally, with the exception that none can land on the land of the riparian owner without his, her or its consent. (Gould v. Hudson River R. R. Co., 6 N. Y. 522.) It follows that neither of these parties had or has the right to invade the rights of the other. The plaintiff's cause of action here cannot be based upon any other consideration. (Fort Plain Bridge Co. v. Smith, 30 N. Y. 44.) The evidence discloses that this farm lies on the west bank of the Hudson river; that for a consider-

able distance it borders on the river; that the fall in the river from the part of the farm involved here to the dam is about five feet; that the area involved is about thirty-five acres; these thirty-five acres are back of the buildings which are along the river bank; the bank at the edge of the water, at its natural flow, is about four or five feet above the water. The land from the edge or bank of the river slopes back toward the west to a decrease in the bank elevation at the brink of about one to two feet; it reaches its lowest level about the center of this thirty-five acre piece. Immediately west of the aforesaid plot of land the land commences to ascend toward the west and north. Before the times complained of herein and now there was and is a main ditch on the north bounds of the farm discharging into the Hudson river; it started from about the center of the alleged affected area. To the south there was and is another ditch, running for several hundred feet along the southern boundary of the farm; it crosses the corner of the Austin farm, crosses the road in a culvert, and discharges through a ditch about three feet deep into the river. This ditch starts from the same point as the one on the northern boundary. This thirty-five-acre plot, which it is claimed is destroyed, is gridironed with ditches; they empty into these main ditches. There are springs upon this piece of land, and its general description is that it is and always was low, much of the time wet, and of marsh formation. These ditches were all dug before there was any complaint or reason for complaint about the overflow from the dam in the river. Were they dug and maintained in anticipation that at some future time a dam would be built or raised that would impede the flow of the river so that it would back up onto the land? It seems to me from this evidence that similar conditions to what is now claimed existed before 1894. The elevation at the dam is 115; at the bottom the Austin ditch, viz., the one draining the farm from the south, is 117; in feet and inches, the bottom of the southern ditch is two and one-half feet above the crest of the dam; in order to overflow the banks of the river on this farm the water would have to be some eight or nine feet over the crest. The river is nine hundred feet wide opposite the farm, and seven hundred feet at the dam. Because of the peculiar formation of the river above the dam, a raise of a foot

Third Department, February, 1921.        [Vol. 195.

at the dam would not effect a raise of over four to six inches in the wide expanse of water opposite the farm. The claim that the water ever overflowed the banks, except in extreme freshets, is not sustained by the evidence; it is obvious that when the river rises from natural causes the dam has no effect on it at its present elevation. It is proven and practically conceded that the only way the plaintiff's land is overflowed by water from the river is through the ditches, the bottom of which are from three to five feet below the surface of the bank. The defendant is consequently charged, in this judgment, with damage it is claimed comes from water let into the ditches dug and maintained or caused or permitted to be by the plaintiff and her predecessors. More than that, defendant is charged with all of the damage it is claimed is done by the water upon this land, from every source, as if it all came through the ditch from the river. Plaintiff's son-in-law swore that the annual rental value of the farm in its present condition was $500, and without the condition alleged to have been created by the raising of the dam, $750. No other evidence was given. We are not left in doubt as to how he computes the damage. On cross-examination he was asked these questions: " Q. Regardless of how the water came to be backed in there, according to your statements. In other words, you assumed that whatever water came on there was put back there by the dam, didn't you? A. Yes, sir. The Court: That is, so far as you are testifying on the question of damages? A. Yes, sir." The evidence leads to the irresistible conclusion that only a very small portion of the water that is seen at times upon the land comes from the river and main ditches. The evidence shows that when the owner occupied and worked this farm it was a good producer; that he kept the ditches open, and that now they are, more or less, filled up; that the farm for years has been run by hired men, renters, or on shares. It is a matter of common knowledge that river bottoms (land along the river) are always low and consequently damp; that the forests of the Adirondacks have been much thinned out, so that the snows are not held and slowly melted; they are now exposed to the sun, melt rapidly and the waters come down. They reach this plot, prepared by these ditches to receive them; those are depres-

sions in the surface of this affected piece of land; water lodging there has to soak and evaporate. The plaintiff's position is that as to the water in the ditch from the river, *first*, it stops other water, if any there, from flowing out; *second*, that the river water, by means of capillary attraction, is carried to the utmost boundaries of the thirty-five acres and deposited and left in the soil. Capillary attraction is not thus discriminatory; it makes no election between the water from the river and that from the hills and from the springs on the land in question. The evidence leads to the conclusion that water from the two ditches would not go upon the land until a considerable body was there from other sources. The damage from the river water through the ditches, under the conditions disclosed by this evidence, is infinitesimal. The plaintiff has the right to exercise her riparian rights for drainage so long as she does not interfere with the rights of the public or invade the shore line or riparian rights of others. The defendant has the same rights. Where it is lame here is that it lands the water that it sets back upon the land of another, in other words, invades her shore line, her riparian possession. For that it is liable; the amount is so small that it almost defies computation. Ten dollars a year will amply cover this damage for the time involved as found in the judgment. The amount of damage should be $150.

Judgment accordingly with disapproval of the findings of fact and conclusions of law contrary to this opinion.

All concur.

Judgment as to damages reversed as excessive, and new trial granted, with costs to appellant to abide event, unless the plaintiff within twenty days stipulates to reduce the damages to $150; upon such stipulation the judgment is so modified and as modified affirmed, without costs. Judgment so far as it denies the injunction affirmed, without costs.