SUSAN THOMPSON, Appellant, *v.* THE STATE OF NEW YORK, Respondent.

Third Department, March 7, 1923.

**Waters and watercourses** — claim against State by owner of island in Hudson river for part thereof appropriated for Barge canal purposes and for consequential damages — Hudson river is navigable at point in question — measure of damages — availability of appropriated parcel as site for dam and cutting off access to island by water are not elements of damages.

The State appropriated, for Barge canal purposes, a part of an island which was owned by the claimant and located in the Hudson river at a point where the stream is navigable and the title to the bed is in the State, and in the improvement of the Hudson river for Barge canal purposes it constructed a dam across

the river on either side of the island, thereby cutting off access to the island by water, and it deposited refuse and dredged material in the river northerly to such an extent as to impede, and perhaps obstruct, transportation by water from the island northerly.

*Held,* that the claimant is entitled to recover the fair market value of her property, for all available uses and purposes, which the State has taken; both the value of that which is taken and consequential damages to her remaining property, the value of the property viewed not merely with reference to the uses to which it is at the time applied, but with reference to the uses to which it is plainly adapted. But, in fixing this market value, the court cannot attribute to the claimant's land any part of the value which might result from a consideration of its value as a necessary part of a comprehensive system of river improvement, nor the value of the property to the government for its particular use.

The availability of the parcel appropriated for a site for a dam could not be taken into consideration in assessing the damages, since the claimant had no right to erect a dam without the consent of the State, nor could the saving in money to the State by the building of the dam at that point, instead of building it farther up the river, be allowed to the claimant as damages.

The loss of right of access to the island by water is not an element of damages or of the market value of the claimant's property.

APPEAL by the claimant, Susan Thompson, from a judgment of the Court of Claims, entered in the office of the clerk of said court on the 5th day of April, 1922, awarding the claimant $1,800.

*Erskine C. Rogers,* for the appellant.

*Charles D. Newton, Attorney-General [Edward J. Mone* of counsel], for the respondent.

VAN KIRK, J.:

The claimant owns an island in the Hudson river between Fort Miller and Fort Edward, containing about forty acres. She does not own the uplands on either side of the river; she has no grant of any lands under water; nor has any wharf or pier or like improvement been constructed by her, with or without a grant from the State. At the north end of this island is Crocker's reef, extending on either side of the island to the shore. There had never been any dam or other construction in the river opposite this island and no grant or permission to construct a dam had been given by the State; the Barge canal leaves the river about three-quarters of a mile above Crocker's reef and is landlocked to a point at least two miles below. Under the Barge Canal Act (Laws of 1903, chap. 147) the State in 1905 appropriated two and nineteen-one-hundredths acres at the north end of the claimant's island. Prior to the appropriation parts of this island had been rented for camp sites. Since the appropriation none of the island has been so used. During the hearings before the Court of Claims it developed that there was a large quantity of moulding sand upon the island,

worth f. o. b. cars about one dollar per ton; none of this had ever been sold. For the use of the old Champlain canal the State cut through Crocker's reef near the easterly shore of the river, so that boats coming down the river had access to the easterly side of the island below the reef. The State constructed its dam upon Crocker's reef across the river on either side of the island, thus closing the old cut through the reef. It also deposited refuse and dredged material in the river from the island northerly to such extent as to impede, and claimant claims to make impossible, transportation from the island northerly to Fort Edward. The court allowed $800 for the value of the land taken and $1,000 for consequential damages to the remainder of the island. The claimant maintains that the award is inadequate because nothing was allowed as consequential damages.

(1) For availability of the appropriated parcel to be used as a site for a dam;

(2) For cutting off claimant's access to railroad facilities for transportation of moulding sand to Fort Edward;

(3) For cutting off access to the island for camps.

The Hudson river at this point is a navigable stream and title to its bed is in the State. (*Fulton Light, H. & P. Co.* v. *State of New York*, 200 N. Y. 400, 413; *Danes* v. *State of New York*, 219 id. 67; *Thompson* v. *Fort Miller Pulp & Paper Co.*, 195 App. Div. 271.) This the claimant concedes. Riparian owners along a navigable stream have, as against individuals, certain rights, including access to the stream, but, as against organized government, the sovereign State, they have no rights that do not yield to commercial necessities, unless there have been specific grants to them by the State. The right of the government to improve and use the public streams for purposes of navigation and commerce is paramount and riparian rights are held and enjoyed subject always to this paramount right. (*Langdon* v. *Mayor, etc.*, 93 N. Y. 129; *Rumsey* v. *N. Y. & N. E. R. R. Co.*, 133 id. 79; *Town of Brookhaven* v. *Smith*, 188 id. 74, 83; *Saunders* v. *N. Y. C. & H. R. R. R. Co.*, 144 id. 75; *Hinkley* v. *State of New York*, 234 id. 309.) In respect to the rights of a riparian owner on a navigable stream, the powers of the State and Legislature to use the stream and its bed for the purpose of improving navigation are as broad and complete as the powers of the Federal government and Congress in the same field. (*Chicago, B. & Q. Railway* v. *Drainage Comrs.*, 200 U. S. 561, 593; *United States* v. *Rio Grande Irrigation Co.*, 174 id. 690, 703.) These powers rest in, and are inseparable from, the sovereign. The stream is public, not private, property. Without a grant from the State, a riparian owner may not lawfully construct a dam or build a bridge across the stream

opposite his lands; the State may permit the construction of dams across a public stream; and, if it permits such structures and thereafter they become obstructions to navigation, may require their removal without compensation, if no contract right from the State conflicts. ( *Union Bridge Co.* v. *United States,* 204 U. S. 364, 388; *Hinkley* v. *State of New York,* 234 N. Y. 309; *Barnes* v. *Midland R. R. T. Co.,* 193 id. 378.) The paramount right in such circumstance absorbs the subject right. When the Legislature determined to improve the Hudson river in connection with and as part of the Barge canal, its determination, both as to the nature and the extent of the improvement, was conclusive and all private rights in the stream must yield. ( *United States* v. *Chandler-Dunbar Co.,* 229 U. S. 53, 70.)

The claimant is entitled to recover the fair market value of her property, for all available uses and purposes, which the State has taken; both the value of that which is taken and consequential damages to her remaining property, the value of the property viewed not merely with reference to the uses to which it is at the time applied, but with reference to the uses to which it is plainly adapted. ( *Boom Co.* v. *Patterson,* 98 U. S. 403.) But, in fixing this market value, the court cannot attribute to the claimant's land any part of the value which might result from a consideration of its value as a necessary part of a comprehensive system of river improvement, nor the value of the property to the government for its particular use. ( *United States* v. *Chandler-Dunbar Co, supra,* 80; *Boston Chamber of Commerce* v. *Boston,* 217 U. S. 189.) The claimant's private property, her island, so far as " taken " or impaired, must be paid for; these the State may not " take " without compensation. (U. S. Const. 14th Amendt. § 1; State Const. art. 1, § 6.) But the stream is not in this sense private property. By the erection of the dam the State took no property right of the claimant; no improvements were destroyed and no lands flowed. Whatever property rights she had in the stream were subject rights, incidental only to her ownership of the island. ( *Scranton* v. *Wheeler,* 179 U. S. 141, 163.) In *Union Bridge Co.* v. *United States* (204 U. S. 364, 396) the court said, quoting from *Chicago, B. & Q. Railway* v. *Drainage Comrs.* (200 id. 561, 593): " The constitutional requirement of due process of law, which embraces compensation for private property taken for public use, applies in every case of the exertion of governmental power. If, in the execution of any power, no matter what it is, the Government, Federal or State, finds it necessary to take private property for public use, it must obey the constitutional injunction to make or secure just compensation to the owner. * * * Upon the

general subject there is no real conflict among the adjudged cases. Whatever conflict there is arises upon the question whether there has been or will be in the particular case, within the true meaning of the Constitution, a 'taking' of private property for public use.   If the injury complained of is only incidental to the legitimate exercise of governmental powers for the public good, then there is no *taking* of property for the public use, and a right to compensation, on account of such injury, does not attach under the Constitution." In *Chicago, B. & Q. Railway* v. *Drainage Comrs.* (*supra*) the court held that the plaintiff could not have compensation for changing its bridge, which had been lawfully constructed, and for reconstructing it to meet the requirements of the public improvement being made. (*New Orleans Gas Co.* v. *Drainage Comm.*, 197 U. S. 453.) The case of *United States* v. *Chandler-Dunbar Co.* (*supra*) deals conclusively with this question. It arose on the St. Marys river, the outlet of Lake Superior. The Chandler-Dunbar Company owned the uplands along the stream for about 2,500 feet, opposite which was a decided fall in the stream; also under the laws of Michigan it owned the bed of the stream to its center; it claimed a valuable water right in the stream. The Federal government in improving the stream for public navigation rendered useless this power. The Chandler-Dunbar Company filed its claim and secured in the lower courts an additional value to its lands on account of this loss of the water power. The government contended on appeal that this was not a proper consideration in estimating the value of the property taken, and the Supreme Court sustained this contention. The Court of Claims in the case here correctly ruled that it could not take into consideration, in assessing the damages, the availability of the parcel appropriated for a site for a dam. Perhaps we should notice in this connection that the claimant argues that the State could have constructed its dam above the island and yet below the junction of the river and canal; that such construction would have been much more expensive to the State; and, therefore, because the State has saved money by taking her property and constructing at Crocker's reef, some allowance should be made to this claimant. This claim is without merit. The question is not what has the State gained, but what has the claimant lost. (*Boston Chamber of Commerce* v. *Boston*, 217 U. S. 189.)

The other two elements seem to be disposed of by the foregoing discussion and the authorities cited.

The loss of right of access to the island by boat is not an element of damages or of market value of claimant's property. The State may adopt any means for improvement of navigation that are not

prohibited by the Constitution. If the State may build a dam to improve navigation, it may perform the work as the Legislature directed and contemplated; if it is necessary to dredge or blast, it may deposit the refuse; if, in depositing refuse within the banks of the stream, it interferes with claimant's approach by water to the island, it interferes with a subject right which is enjoyed only until the paramount right of the State absorbs it for purposes of commerce, and for such interference the riparian owner may not have damages. A dam in a stream generally obstructs navigation. (*Slingerland* v. *International Cont. Co.*, 169 N. Y. 60, 71; *Scranton* v. *Wheeler*, 179 U. S. 141.) As stated by Chief Justice FULLER: " Moreover, riparian ownership is subject to the obligation to suffer the consequences of the improvement of navigation in the exercise of the dominant right of the Government in that regard." (*Gibson* v. *United States*, 166 U. S. 269, 276; *United States* v. *Chandler-Dunbar Co., supra,* 53, 70.) In the *Gibson* case the claimant owned rich lands on Neville island in the Ohio river. The government, in improving navigation of the river, constructed a dike which destroyed claimant's use of her landing for shipment of supplies and farm or garden products; she was not allowed to recover therefor as an element of her damages. In *Scranton* v. *Wheeler (supra,* 164), where a question similar to that in the *Gilson* case arose, the court said: " In our opinion it was not intended that the paramount authority of Congress to improve the navigation of the public navigable waters of the United States should be crippled by compelling the Government to make compensation for the injury to a riparian owner's right of access to navigability that might incidentally result from an improvement ordered by Congress. The subject with which Congress dealt was navigation. That which was sought to be accomplished was simply to improve navigation on the waters in question so as to meet the wants of the vast commerce passing and to pass over them. Consequently the agents designated to perform the work ordered or authorized by Congress had the right to proceed in all proper ways without taking into account the injury that might possibly or indirectly result from such work to the right of access by riparian owners to navigability." (*Sage* v. *Mayor,* 154 N. Y. 61, 69.)

We have no question here concerning the rights of riparian owners as between themselves; the case of *United P. B. Co.* v. *Iroquois P. & P. Co.* (226 N. Y. 38) does not apply.

The Court of Claims adopted the correct rule of damages, and we find no errors in the decision of the court prejudicial to the

44

rights of the claimant. The court viewed the premises; the amounts allowed are fair to the appellant.

The judgment should be affirmed, with costs.

Present — H. T. Kellogg, Acting P. J., Kiley, Van Kirk, Hinman and Hasbrouck, JJ.

Judgment unanimously affirmed, with costs.