In the Matter of the Application of the BOARD OF SUPERVISORS OF THE COUNTY OF CHENANGO for the Appointment of Commissioners of Appraisal in Condemnation Proceeding (Plymouth-Beaver Meadow-Otselic Center County Road).

County Court, Chenango County, October, 1932.

*Fred L. Mallory*, for the county.

*Searle & Searle* [*D. Francis Searle* of counsel], for Tony Hanna.

BROWN, J. This is an application for the confirmation of the report of the commissioners of appraisal appointed in these proceedings to ascertain and determine the compensation to be paid Tony Hanna for land acquired from him. Mr. Hanna is the owner of approximately twenty-nine acres of land, located in the town of Otselic, Chenango county. This land adjoined the improved highway leading from the city of Norwich through Beaver Meadow to Otselic Center. The new route involving the construction work, and carried forward for the purpose of eliminating curves in the old road, passes through the Hanna property, and takes approximately two and fifty-one one-hundredths acres of land for construction purposes.

The commissioners have found, and so report, that the damage sustained by Mr. Hanna is $129.55, with interest from April 30, 1931, to the date of the report, August 8, 1932, making a total award of $139.50. The commissioners filed a previous report, and the matter was referred back to them for revision, and subsequently, on the coming in of a second report, the matter was sent back to them again for the taking of additional evidence in connection with the cost of fencing. The items or elements of damages entering into the final award of the commissioners are as follows: Value of land taken, $25.10; value of three apple trees, cut or destroyed, $15; inconveniences suffered by the owner by reason of the tract of land being divided by the new highway, considering the cost of approaches on either side, $40; cost of building fence, $49.45, thus arriving at the damages sustained by the owner, based upon the difference between the value of his property prior to the construction and after the completion of said highway, as $129.55.

The owner opposes confirmation of the report on the ground that the award is inadequate. The owner contends that the commissioners did not give a fair valuation of the land, that he

should have been allowed the expense of moving buildings, and that the amount allowed for fence construction is insufficient.

A portion of the tract of twenty-nine acres owned by Mr. Hanna is wet and low land, and apparently of little, if any, value for tillage purposes. There is upon the tract a house, badly dilapidated and in very poor condition, and at present unsuitable for dwelling house purposes.

One of the contentions of the owner is that the land in question is adaptable to the raising of muskrats, and that this feature was not given sufficient consideration by the commissioners. In determining the damages sustained by an owner when property is taken without his consent for public purposes, the marketable value may be considered in the light of its prospective use. (*Matter of Gilroy*, 85 Hun, 424; *Thompson* v. *State of New York*, 204 App. Div. 684.) Judge VAN KIRK, writing for the court in the latter case, says: " The claimant is entitled to recover the fair market value of the property for all available uses and purposes, which the State has taken; both the value of that which is taken, and consequential damages to her remaining property, the value of the property viewed not merely with reference to the uses to which it is at the time applied, but with reference to the uses to which it is plainly adapted." (*Boom Co.* v. *Patterson*, 98 U. S. 403.)

Expert evidence was given in behalf of the owner, as well as the county, as to the adaptability of the premises for the raising of muskrats. This evidence, as usually happens in the case of expert witnesses, varied quite materially. The expert for the owner saw very promising possibilities of muskrat farming on the tract of land. The expert for the county minimized such possibilities. The commissioners were not bound to adopt the value placed upon the property by either expert. (*N. Y. C. & H. R. R. R. Co.* v. *Newbold*, 166 App. Div. 193; *Matter of Bronx Parkway Commission*, 192 id. 412; *Ferguson* v. *Hubbell*, 97 N. Y. 507, 514.) The owner complains that the practical use of the land for muskrat raising will be destroyed because of the noise from automobile and truck traffic along the highway, it being claimed that such noise will be a very disturbing factor in the propagation of muskrats. It is a significant fact, however, that this disturbing element was present in the use of the old highway as used prior to the building of the new roadway, as the premises in question, and especially the portion thereof to be used for the raising of muskrats, adjoined the old road.

I do not consider the element of cost for moving the old house, contended for by the owner, as applicable here as an element of damage. (*Matter of City of New York* [*Briggs Ave.*], 118 App. Div. 224, 226; *Matter of City of New York* [*Baychester Ave.*], 120 id. 392.)

The commissioners had before them the evidence of witnesses as to the cost of fence building. They had a right to supplement such evidence by their own personal knowledge and experience.

The owner is entitled to receive full compensation for all damages that he has sustained by the appropriation of his land for public use. This includes the value of the premises actually taken, and also any damages resulting to the remaining part of his land. The actual and consequential damages should be adequate to fully recompense him for such value and loss. He should not, however, be entitled to receive compensation because of any fanciful or imaginary value that he himself may place upon his property. The values sought to be established should not be speculative and hypothetical. (*N. Y. C. R. R. Co.* v. *Maloney*, 234 N. Y. 208.) The land in question is situated in a somewhat remote locality. So far as the evidence shows it has not, since its ownership by Mr. Hanna, been productive of revenue in any attractive amount. In its present condition the house could not be occupied as a dwelling. I am not convinced that the report filed by the commissioners does not represent the fair and reasonable damage the owner has sustained.

The conclusion reached by the commissioners, after a consideration of the evidence, aided by their own judgment after a view of the premises, and supported by their experience, should not be disturbed unless it is clear that they have erred in that judgment or adopted some erroneous theory in determining the question of damages, or made their findings entirely in disregard of the evidence, and as a result, injustice follows. (*N. Y. C. & H. R. R. R. Co.* v. *Newbold, supra; Matter of Manhattan R. Co.* v. *Comstock*, 74 App. Div. 341, 342; *Matter of City of New York*, 198 N. Y. 84; *Matter of Mayor, etc.*, 99 id. 569; *Matter of Bensel* [*Southern Aqueduct, Secs. 15 & 17*], 152 App. Div. 500.)

The attorney for Mr. Hanna takes the position that the owner in these proceedings is entitled to costs under section 16 of the Condemnation Law. This section provides that before service of a petition and notice in condemnation proceedings, the plaintiff " may make a written offer to purchase the property at a specified price, which must within ten days thereafter be filed in the office of the clerk of the county where the property is situated; and which cannot be given in evidence before the commissioners, or considered by them. The owner may at the time of the presentation of the petition, or at any time previously, serve notice in writing of the acceptance of plaintiff's offer, * * *. 2. If the offer is not accepted, and the compensation awarded by the commissioners does not exceed the amount of the offer with interest from the time

it was made, no costs shall be allowed to either party. If the compensation awarded shall exceed the amount of the offer with interest from the time it was made, or if no offer was made, the court shall, in the final order, direct that the defendant recover of the plaintiff the cost of the proceeding,  *   *   *."

It appears that an offer was made by service of a notice of such offer on the owner of the premises on March 24, 1931. Mr. Hanna admits the making of the offer of $150 and service of the notice of such offer, and that he did not accept it. Following the service of the notice of offer, with some other papers in the case, it was taken to the office of the clerk of Chenango county and left with the other papers for filing. Through some oversight the offer was not placed among the papers in this case in the file where such papers were kept, but was folded inside of a paper in a prior proceeding in this same matter which had been dismissed, and although a search for the offer had been made in the clerk's office it was not discovered until August 26, 1932, when, in examining some other papers, it was found by the deputy clerk folded inside of an order in the prior case. The final order, within which the offer was folded, was filed in the clerk's office March 27, 1931. On finding the offer, on August 26, 1932, the deputy clerk indorsed thereon that date as the date of filing. Subsequent to March 27, 1931, and on or about May 2, 1932, Mr. Hanna, in company with his counsel, Mr. Searle, had been to the county clerk's office to examine the record as to the filing of the offer, and at that time it could not be found.

The objection that the offer, as made, was ineffectual as an offer contemplated by the statute, for the reason it contained, at the end of the description, the following, " Said Board require the title to said lands or a right of way across the same," and that the offer was conditional, because it required the acceptance, if made, " at once," is, I believe, untenable. The provision first above quoted, and the limitation following the amount offered, were inadvisedly incorporated in the notice. There is no evidence, however, that the owner of the premises was misled to his prejudice by reason of the insertion of the statements mentioned. There is no proof that he would have accepted the offer if the statements objected to by counsel had been omitted from the notice of offer. The owner was not deceived by the statement in the notice that the board required the title to the land, or in the alternative, a right of way across the same, for it clearly indicated that the fee of the land was required, the beginning of the notice reading, " Please take notice that the Board of Supervisors of Chenango County require a parcel of land now owned by you in the Town of Otselic "

followed by a description of the premises to be acquired, by metes and bounds. It further appears that Mr. Hanna was served with a notice of the presentation of the petition for the appointment of commissioners of appraisal on the 31st day of March, 1931. This gave him notice that the application for such appointment would be made before this court on April 13, 1931. Section 150 of the Highway Law requires, " A copy of such petition and map shall be filed in the office of the county clerk." This petition which, on filing, became a public record, definitely disclosed that the county required and intended to acquire the fee of the premises described in the notice of offer. This appears in the petition under subdivisions 5, 7, 8 and 11. I think the offer served on Mr. Hanna, and the petition, which was open to inspection as soon as filed, were sufficient to apprise the owner that the fee, rather than an easement, was to be acquired by the county for the purposes of the highway construction. Even had he been in doubt, and been willing to have accepted the amount, in case an easement only was taken, he could have made his acceptance on condition that an easement, and not the fee, was to be acquired. The fact that the written offer was not discovered by the owner and his counsel at the time of the search for same in the clerk's office on May 2, 1931, because it was not with the papers in this proceeding, did not work any prejudice, for the time had then passed for the serving of the notice of the acceptance of plaintiff's offer. To have been effective, any notice of acceptance should have been served on April 13, 1931, the time of the presentation of the petition, or at any time previously.

The objection that there was no proper filing of the offer, raised by counsel, suggests the inquiry if such filing was necessary in order to make the offer effective in order to govern the question of costs. In other words, was the service of the offer upon the owner the only act necessary, or, in order to make the act complete, was it essential that the offer should be filed with the clerk of the county? I am inclined to believe that in order to constitute a good offer under section 16 of the Condemnation Law, it was necessary not only to serve the offer upon the owner of the land, but also to file the same in the clerk's office. The filing of the notice of acceptance becomes a part of the record upon which the order provided for in the section may be entered. Was the offer filed with the clerk, within the meaning of the section mentioned? Counsel for the owner takes the position that in order to have constituted a valid filing, it was necessary that it receive some official act on the part of the clerk, such as an indorsement thereon which is usually made in the case of the filing of instruments in his office.

Counsel has not furnished me with any authorities defining the term or meaning of " filed " as used in the section. From the research that I have made, I am of the opinion that the offer was filed with the clerk on the 27th of March, 1931, and that the act of filing consisted of the delivery of the offer to the clerk, or some one in charge of the office, for the purpose of having the same retained as a permanent record. The act of the clerk in indorsing papers filed, showing the date of receipt, is evidential only, and does not, of itself, constitute the act of " filing." In ancient times, filing consisted of putting the paper upon a thread, string or wire. " A paper is said also to be filed when it is delivered to the proper officer, and by him received to be kept on file." " In the sense of a statute requiring the filing of a paper or document, it is filed when delivered to and received by the proper officer, to be kept on file. The word carries with it the idea of permanent preservation of the thing so delivered and received; that it may become a part of the public record." (Bouvier Law Dict.)

The general trend of judicial decisions is to the effect that the delivery of a paper to an official, for the purposes of safekeeping and as a public record, constitutes the act of " filing."

" The indorsement on an instrument of the fact and time of deposit in the recorder's office for filing is not essential to the filing thereof, and does not affect it." (*Edwards* v. *Grand*, 121 Cal. 254.) The same rule is announced in *Grubbs* v. *Cones* (57 Mo. 83); *Bettison* v. *Budd* (21 Ark. 578); *Oats* v. *State* (153 Ind. 436); *State* v. *Heth* (60 Kan. 560); *King* v. *Penn* (43 Ohio St. 57).

In *Reed* v. *Inhabitants of Acton* (120 Mass. 130) the court says: " A document may properly be said to be filed with a town clerk when it is placed in his official custody, and is deposited in the place where his official records and papers are usually kept."

" A paper is filed when it is delivered to the proper official and by him received and filed." (*United States* v. *Lombardo*, 241 U. S. 73.)

" It is a mistake to suppose that the marking or indorsing on the paper the time of filing it, is the substantial thing, or the act of filing. Such indorsement is merely a memorandum *of the time* of the filing, and not the filing itself. The filing consisted in presenting the mortgage at the office and leaving it there, and depositing it in the proper place with the papers in the office." (*Bishop* v. *Cook*, 13 Barb. 326.)

In *Matter of Norton* (25 Misc. 48) the court says: " In order to be ' filed ' with the clerk, a paper must be delivered to him in his office where the law requires him to keep his books and files, and to receive and file papers. That this is the rule, whether the words

of the statute in respect of filing be ' in the office of the clerk, or ' with the clerk,' is beyond doubt." (*Cheesman* v. *Cheesman*, 203 App. Div. 533; *Gates* v. *State*, 128 N. Y. 227, 228.)

The award made by the commissioners of appraisal being less than the amount of the offer served on Mr. Hanna and filed with the clerk, the owner cannot recover costs.

An order will be granted, confirming the amended report of the commissioners, as of August 8, 1932.