# NORTHERN PACIFIC AND MONTANA RAILWAY COMPANY, RESPONDENT, v. FORBIS, ET AL. APPEAL OF MURRAY.

[Submitted March 4, 1895. Decided March 11, 1895.]

EMINENT DOMAIN—*Measure of damages for land taken.*—The owner of land condemned for railroad purposes may recover the market value of the land for its most valuable purposes. And, where the land is valuable both as a mine and as town lots, it is error to force the owner to elect whether he will prove its value for the one use or the other. (*Montana Ry. Co.* v. *Warren,* 6 Mont. 275; 137 U. S. 348, explained.)

SAME—*Railroad right of way over mineral land.*—A railway company takes only the easement of the use of the surface of land condemned for its right of way, and not the owner's estate in the minerals, nor his right to work the ground for the minerals, if he can do so by not interfering with the company's estate in the easement.

*Appeal from Second Judicial District Silver Bow County.*

PROCEEDING to condemn land for railroad purposes. The defendant Murray's motion for a new trial was denied by McHATTON, J. Reversed.

Statement of the case by the justice delivering the opinion:

This is a proceeding brought by respondent to condemn land of appellant for railroad purposes. There were a large number of landowners as defendants, one of whom, James A. Murray, owner of what was called the Railroad Mining Claim, being dissatisfied with the award of the commissioners, appealed to the district court. The case was there tried, and, as a result, Murray was awarded the sum of four thousand dollars as damages. He moved for a new trial, which motion

was denied, and he now appeals from that order, and from the judgment.

There is one principal error assigned by the appellant in this case, which appears in the record in several places. It may be stated as follows: The defendant on the trial desired to prove the value of the ground for townsite or town-lot purposes, and also its value as a mining claim. The court held that the landowner could obtain the market value of the land, based upon the availability for the most valuable purposes for which it could be used, and could not recover a value for two purposes, and therefore required the appellant, in his proof, to elect which value he would prove, that is, the value as town lots, or the value as a mine. Under this ruling the appellant involuntarily elected to prove the value as town lots, and now complains of error in that he was not allowed to prove value as a mine as well.

*William Scallon*, for Appellant.

In estimating the value of property taken for public use it is the market value of the property which is to be considered. (Lewis on Eminent Domain, §§ 478, 479; *Anna* v. *Harlin*, 99 Cal. 538; *San Diego Land etc. Co.* v. *Neale*, 88 Cal. 50.) If the property be available for one of several uses, or available at one and the same time for two or more uses, all of these may be shown. (*Boom Co.* v. *Patterson*, 98 U. S. 403; *Maynard* v. *City of Northampton*, 157 Mass. 218; *Chicago etc. Co.* v. *Davidson*, 49 Kan. 589; *West Virginia etc. Co.* v. *Gibson*, 21 S. E. Rep. 1055; *Matter of Furman Street*, 17 Wend. 669; *Goodwin* v. *Cincinnati etc. Canal Co.*, 18 Ohio St., 168; *Young* v. *Harrison*, 17 Ga. 30; *King* v. *Minneapolis etc. Ry. Co.*, 32 Minn. 224; *Colvill* v. *St. Paul etc. Ry. Co.*, 19 Minn. 245. The case of *Montana Ry. Co* v. *Warren*, 6 Mont. 279, examined and approved.)

*Cullen & Toole*, for Respondent.

A use for mining purposes, and a use for townsite purposes, being conflicting uses, a recovery for both of such purposes could not be permitted. (*Montana Ry. Co.* v. *Warren*, 6 Mont. 284. It is the market value of the surface for surface purposes

that is to be ascertained, and not its value for the minerals that may or may not be contained in the premises beneath the surface. As to these, they belong to the owner of the fee, and the railroad company acquires no interest in them by its condemnation proceedings (*Barclay* v. *Howells*, 6 Pet. 498; *Blake* v. *Rich*, 34 N. H. 282; *Tucker* v. *Eldred*, 6 R. I. 404; *Woodruff* v. *Neal*, 28 Conn. 165; *Gedney* v. *Earl*, 12 Wend. 98; *Jackson* v. *Hathaway*, 15 Johns. 447; *Winter* v. *Peterson*, 24 N. J. L. 524; *Goodtitle* v. *Aiken*, 1 Burr. 133; *Stevens* v. *Whistler*, 11 East, 51; *Perley* v. *Chandler*, 6 Mass. 454;) and the owner has the right to work and mine the same, providing he does so without interfering with the use of the surface by the railroad company. (*Hollingsworth* v. *Des Moines Ry.*, 63 Iowa, 443; *West Covington* v. *Freking*, 8 Bush, 121; *Dubuque* v. *Benson*, 23 Iowa, 248; *Des Moines* v. *Hall*, 24 Iowa, 234; *Fletcher* v. *Great West Ry. Co.*, 29 L. J. Ex. 253; *Midland R. R. Co.* v. *Checkley*, 36 L. J. Ch. 380; *Strowbridge Canal Co.* v. *Earl of Dudley*, 30 L. J. Q. B. 108.) For this reason it has been held, that, in estimating damage to the premises taken, the value of the mineral contained therein should not be considered, and that such damages as might be occasioned by the difficulty of getting the mineral on account of the occupation of the surface by another were too remote to be estimated. (*Searles* v. *Lackawanna etc. R. R. Co.*, 33 Pa. St. 57; Lewis on Eminent Domain, § 486.)

DE WITT, J.—The court below based its ruling in the matter complained of upon its view of the decision in the case of *Montana Ry. Co.* v. *Warren*, 6 Mont. 275. That was an action by the railway company to condemn the land of a mining claim for railroad purposes. In that case the value of the land, both as a mine and as town lots, was proven. But the court instructed the jury that the landowner could not recover the value of the land for both purposes. This is all that is said of the instruction in the report of the case in 6 Montana, page 284. Upon examination of the record in the case, as filed in this court, we find that the instruction in this respect was, in full, as follows:

"12. If the jury believe from the evidence that the use of

the surface of the Nipper claim for town-lot purposes would prevent its use for mining purposes to as great an extent as the construction of the railway prevents such use, and if they base their estimate of damages on the value of such surface for town lots, then they will not consider or allow any damages for any injury or inconvenience, or any diminution in value to or in the .claim for mining purposes—that is to say, the jury cannot, if they find as above, allow the owners damages both for the value of the surface of town lots, and also for the value of such surface for mining. purposes."

The principle announced in the Warren case in this court and upon which the district court considered that it was properly proceeding in the case at bar was not disturbed on the appeal of that case to the United States supreme court. (137 U. S. 348.)

We are of opinion that the instruction in the Warren case, which we have quoted above, is a correct statement of the law; and, furthermore, that if this instruction had been placed in the opinion in that case in full, that the reasoning of the case would have more symmetrically appeared, and that the district court, in the case at bar, in ruling upon the question of evidence above described, would have been guided to a conclusion different from that which the learned judge below adopted. We are of opinion that the decisions hold that the landowner may recover the market value of the land for its most valuable purpose.

The United States supreme court said, in the case of *Boom Co.* v. *Patterson*, 95 U. S. 105, as follows:

"The inquiry in such cases must be, what is the property worth in the market, viewed not merely with reference to the uses to which it is at the time applied, but with reference to the uses to which it is plainly adapted; that is to say, what is it worth from its availability for valuable uses. Property is not to be deemed worthless because the owner allows it to go to waste, or to be regarded as valuable because he is unable to put it to any use. Others may be able to use it, and make it subserve the necessities or convenience of life. Its capability of being made thus available gives it a market value which can be readily estimated. So many and varied are the circum-

stances to be taken into account in determining the value of property condemned for public purposes, that it is perhaps impossible to formulate a rule to govern its appraisement in all cases. Exceptional circumstances will modify the most carefully guarded rule; but, as a general thing, we should say that the compensation to the owner is to be estimated by reference to the uses for which the property is suitable, having regard to the existing business or wants of the community, or such as may be reasonably expected in the immediate future. . . . . The views we have expressed as to the justness of considering the peculiar fitness of the lands for particular purposes as an element in estimating their value find support in the several cases cited by counsel. Thus, *In the Matter of Furman Street*, 17 Wend. 669, where a lot upon which the owner had his residence was injured by cutting down an embankment in opening a street in the city of Brooklyn, the supreme court of New York said that neither the purpose to which the property was applied, nor the intention of the owner in relation to its future enjoyment, was a matter of much importance in determining the compensation to be made to him; but that the proper inquiry was, 'What is the value of the property for the most advantageous uses to which it may be applied'? In *Goodwin* v. *Cincinnati etc. Canal Co.*, 18 Ohio St. 169, where a railroad company sought to appropriate the bed of a canal for its track, the supreme court of Ohio held that the rule of valuation was what the interest of the canal company was worth, not for canal purposes, or for any other particular use, but generally for any and all uses for which it might be suitable. And in *Young* v. *Harrison*, 17 Ga. 30, where land necessary for an abutment of a bridge was appropriated, the supreme court of Georgia held that its value was not to be restricted to its agricultural or productive capacities, but that inquiry might be made as to all purposes to which it could be applied, having reference to existing and prospective wants of the community. Its value as a bridge site was, therefore, allowed in the estimate of compensation to be awarded to the owner."

It was said in the case of *Colorado M. Ry. Co.* v. *Brown*, 15 Col. 196, as follows: "In arriving at the value of the

property taken, and the damages, if any, to the residue, a wide range of evidence is admissible. It must be conceded that the matters admitted in evidence on the trial of this case, as above stated, have some bearing upon the compensation and damages to be awarded by the jury, though, without proper instructions from the court, the jury might be misled by such evidence. But as counsel do not urge in argument any thing against the charge, and as, upon examination the instructions appear to be full and fair, we must presume that the jury did not draw improper inferences from the evidence."

In Lewis on Eminent Domain, section 479, the author, after reviewing the topic of value for particular uses, closes the section with this language: "The conclusion from the authorities and reason of the matter seems to be that witnesses should not be allowed to give their opinions as to the value of property for a particular purpose, but should state its market value in view of any purpose to which it is adapted. The condition · of the property and all its surroundings may be shown, and its availability for any particular use. If it has a peculiar adaptation for certain uses, this may be shown, and, if such peculiar adaptation adds to its value, the owner is entitled to the benefit of it. But when all the facts and circumstances have been shown, the question at last is, What is it worth in the market"? (See, also, *Maynard* v. *City*, 157 Mass. 218; *Russell* v. *St. Paul etc. Ry. Co.*, 33 Minn. 210; *Harrison* v. *Young*, 9 Ga. 359; *Johnson* v. *Freeport etc.. R. R. Co.*, 111 Ill. 413; *Amoskeag Co.* v. *Worcester*, 60 N. H. 522; *Goodwin* v. *Cincinnati etc. Co.*, 18 Ohio St. 169; 6 Am. & Eng. Ency. of Law, 569, note 7, and cases; *Little River etc. R. Co.* v. *McGehee*, 41 Ark. 202.)

Upon the trial of the Warren case testimony as to value for town-lot purposes, and for mining purposes, was offered, and allowed by the court. With this condition of the testimony, we think that the court properly stated the law applicable to such testimony, when it instructed the jury that the landowner could not recover the value of the ground for two uses or purposes, but we think that the court by this holding intended to say, and that it was so understood in the case, that this meant two incompatible uses. For if the uses are incompatible, if the landowner uses the land for one purpose he

cannot use it for the other, nor could his grantee use the land for both such incompatible purposes, whether such grantee is a railroad company receiving by operation of law, or a town-lot occupant receiving by the grantor's voluntary deed.

But, on the other hand, if the proposed or described uses of the land *do not interfere with each other, it* is apparent that the owner or grantee can use the land for both purposes, and, if such owner or his grantee can so use the land for two purposes, there is a value for each purpose, of which value the landowner is deprived, whether his land is taken from him by condemnation, or granted by him by voluntary deed. Such two compatible uses of the land would, therefore, go to constitute its market value, and it is conceded that the owner may recover the market value. We think that these views were those which obtained upon the trial of the Warren case.

In the instruction of the court to the jury in that case it was held, in effect, that a landowner could not recover a value for two uses of the land if the one use excluded the other. Thus the court instructed the jury. The court did not instruct the jury simply and baldly that the landowner could recover only for the most valuable use, nor did the court instruct the jury baldly that the landowner could not recover for two uses, but the jury was instructed, in effect, that if one use excluded the other the landowner could recover for one only, and that he might recover for the most valuable use. By referring to the instruction in the Warren case it is seen that it holds that if the town-lot use prevented a mining use to as great an extent as the railway use would prevent the mining use, then the landowner could recover the value of one use only. This seems to us logical, and perfectly in accord with the decisions that the landowner may recover the market value of the land.

But in the case at bar the court, by excluding evidence as to value of the land for a mining use, and by forbidding the landowner from proving more than one use, decided the question *a priori* of whether the town-lot use would, in fact, interfere with the mining use to as great an extent as the railway use would prevent a mining use. We cannot but conclude that this was a question of fact which should have been determined by evidence. The evidence being introduced, the

court should, by appropriate instructions, as in the Warren case, have properly limited the consideration of this evidence by the jury. The jury could then, under these proper instructions, have determined whether the town-lot use would destroy the owner's use of the surface of the ground for mining purposes to the same extent as would the railway use.

It must be remembered throughout this whole consideration, however, that the railway company condemns and takes only the easement of the use of the surface of the ground (Code Civ. Proc., § 599), and does not take the owner's estate in the minerals, or the right to work the ground for the minerals, if he can do so by not interfering with the railway's estate in the easement. (*Perley* v. *Chandler*, 6 Mass. 453; *West Covington* v. *Freking*, 8 Ky. 121; *Dubuque* v. *Benson*, 23 Iowa, 248; *Blake* v. *Rich*, 34 N. H. 282; *Tucker* v. *Eldred*, 6 R. I. 404; *Woodruff* v. *Neal*, 28 Conn. 164; *Jackson* v. *Hathaway*, 13 Johns. 447.)

Therefore, in considering the compatibility or noncompatibility, the consistency or inconsistency, of the uses of this surface easement for town-lot purposes and mining purposes, or for railway purposes and mining purposes, there must be constantly kept in mind the estate which the condemnation by the railway company takes, namely, the easement of the right of way, which would be the same estate, as far as the mines are concerned, as would be granted by the owner if he voluntarily deeded to a town-lot occupant, reserving to himself the mines.

It is perhaps difficult to understand how the surface of the ground could be used for mining purposes if the easement of the right of way to the railway company had been granted, any better than such surface could be used for mining purposes if an easement for town-lot uses had been granted, but we cannot hold otherwise than that this matter is a question of fact upon which evidence should have been allowed, and upon which the jury should have decided, under proper instructions, as we have above pointed out.

The judgment is therefore reversed, and the case is remanded for new trial.

*Reversed.*

HUNT, J., concurs.