INTERSTATE POWER CO., RESPONDENT, *v.* ANACONDA COPPER MIN. CO. ET AL., APPELLANTS.

(No. 3,755.)

(Submitted June 26, 1916.  Decided July 17, 1916.)

[159 Pac. 408.]

*Eminent Domain—Complaint—Description of Land—Sufficiency—Practice—Trial—Right to Open and Close—Evidence—New Trial—Harmless Error.*

Eminent Domain—Trial Practice—Right to Open and Close.
   1.  *Quaere:* Has the owner of land sought to be condemned the right to open and close on the question of damages?
New Trial—Harmless Error.
   2.  For alleged error in a ruling which worked to the advantage of appellant, rather than to his prejudice, a new trial will not be ordered.
Eminent Domain—Complaint—Description of Land—Sufficiency.
   3.  Complaint in a condemnation suit which described the land by metes and bounds on three sides, and on the fourth merely designated

a navigable river as the boundary, without stating that by the latter description the high or low water mark was meant, *held* sufficient to meet the requirement of section 4529, Revised Codes.

Same—Complaint—Area of Land.
4. Under section 7337, Revised Codes, the area of the land sought to be acquired by condemnation proceedings is not required to be stated in the petition.

Same—Complaint—Unnecessary Allegations.
5. Where plaintiff electric power company in a condemnation proceeding alleged sufficient facts to show that the use sought to be made of the land was a public one, it was not necessary to specifically allege that there was a present or prospective demand for its products.

Same—Evidence—Immateriality.
6. Evidence as to the practicability of plaintiff's power plant and the method of its installation, *held* properly excluded as having no bearing on the question at issue—the amount of damages recoverable by defendants.

Same—Verdict—When Conclusive.
7. A verdict in a condemnation suit which was based upon a substantial conflict in the evidence and was well within the extremes fixed by the different witnesses, and which was approved by the trial court in denying appellants' motion for a new trial, will be accepted as conclusive on appeal.

[As to evidence of damages in eminent domain proceedings, see note in 22 Am. St. Rep. 49.]

*Appeal from District Court, Sanders County; Asa L. Duncan, Judge.*

CONSOLIDATED ACTIONS by the Interstate Power Company against the Anaconda Copper Mining Company and another. From judgments for plaintiff and orders denying them new trials, the defendants appeal. Affirmed.

*Mr. Henry C. Stiff*, for Appellants, submitted a brief and argued the cause orally.

*Messrs. Tolan & Gaines*, for Respondent, submitted a brief; *Mr. R. F. Gaines* argued the cause orally.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

The following statement, which is in part quoted from appellants' brief, will be sufficient to illustrate the contentions made herein in their behalf: "The respondent, plaintiff below, filed in the district court seven actions, numbered 601, 602,

603, 604, 605, 606 and 608, for the purpose of condemning certain parcels of land along the banks of Clark's Fork of the Columbia River, in Sanders county, Montana, the said lands to be flooded because of the proposed construction of a dam or dams across the channel of said stream, 'wherewith to confine and impound the waters of said river, the waters so confined and impounded to be then and thereafter used for the generation of electrical power.' Plaintiff sought to acquire a fee-simple title to the lands asked to be condemned, 'but reserving to defendants and their heirs, personal representatives, successors and assigns the right of access to the waters of the aforesaid river at any and all times.' The Anaconda Copper Mining Company, one of the appellants, was made a defendant in all of said actions, and the sole defendant in cause No. 608, and the Blackfoot Land Development Company, the other appellant, was made a defendant in one cause only, No. 605. There were other parties made defendants in six of the cases, but awards were made and the causes tried in the district court as to the Anaconda Copper Mining Company and Blackfoot Land Development Company only, and they are the sole appellants in this court. Appellants filed answers in all the cases in which they were made parties, on July 15, 1914, and on that date an 'order of condemnation' was made and filed in each case, and commissioners appointed.'' After the commission had made its award, the appellants, being dissatisfied with the amount of damages assessed, appealed therefrom to the district court. The several causes were by stipulation consolidated for the purposes of the trial and further proceedings except for final order and decree. The trial was had by the court sitting with a jury on November 17, 1914. Under the instructions of the court, the jury returned a separate verdict in each case, fixing the amount which they found appellants entitled to have awarded to them, and a separate judgment was rendered for this amount. While the appellant Blackfoot Development Company was made defendant in cause 605 only, it was disclosed during the trial that it had acquired

an interest in some of the lands which under the allegations in the pleadings appeared to be owned by the Anaconda Copper Mining Company only. It was thereupon agreed by counsel that in awarding the amounts to which each of these appellants should be found entitled, the jury should make their award as if the ownership of each parcel taken were correctly set forth in the pleadings. Upon the return of the several verdicts, final orders of condemnation and decrees were made and entered in accordance with the stipulation of counsel. Appellants' several motions for new trial having been denied, they brought the causes to this court by separate appeals from the several judgments and orders denying their motions. All of them have been submitted together upon one brief.

1. At the commencement of the trial, after argument by [1] counsel, the court directed that the plaintiff assume the burden of proof as in ordinary cases, and that the trial proceed accordingly. This ruling is made the basis of appellants' first assignment of error. There is a diversity of opinion among the courts as to which party has the right to open and close the trial on the question of damages in this class of cases. Mr. Lewis declares it to be the rule, supported by the great weight of authority, that the owner is entitled to open and close. The cases on the subject are cited in the note to his text. (Lewis on Eminent Domain, 3d ed., 645.) We are inclined to disagree with Mr. Lewis in his conclusion. But we are not required to examine the cases and announce a rule in this case, for the reason that counsel made no objection to the court's action, stating the grounds thereof, as required by the statute (Rev. Codes, sec. 6785), in force at the time the trial was had. But aside from this, if it be conceded that the appellants had the right to open and close, it does not appear, nor does counsel undertake to point out, wherein the appellants suffered prejudice. Counsel is content to rest upon the bare statement that the court denied him the right in question. [2] The course pursued by the court would seem to have been to their advantage rather than the contrary, for it cast

upon the respondent the burden of establishing the amount which it must pay appellants, by a preponderance of the evidence. Under these circumstances, appellants' claim that they are entitled to a new trial ought not to be treated with indulgence. (Rev. Codes, sec. 6593; *Copenhaver* v. *Northern Pac. R. Co.,* 42 Mont. 453, 113 Pac. 467; *White* v. *Chicago, M. & St. P. Ry. Co.,* 49 Mont. 419, 143 Pac. 561.)

2. By his second assignment, counsel questions the sufficiency of the several complaints, on the grounds (a) that they do not [3] contain a sufficient description of the several parcels of land sought to be condemned; and (b) that the facts stated do not show that the lands are sought for a public use. Section 7337 of the Revised Codes declares that "the complaint must contain * * * a description of each piece of land sought to be taken." The description of each piece sought to be taken is set forth in the complaint by metes and bounds on three sides definitely fixed as to length and location by reference to the lot, section, and township of which it is a part, as designated by the public land surveys. For the other boundary, the river merely is designated. The objection made is that the description does not state that this means the line of low or high water, and hence the designated boundaries do not inclose the area sought. This contention is wholly without merit. It is a matter of common knowledge that Clark's Fork of the Columbia River is a navigable stream, and that grants of public lands lying along its course are bounded on that side by the line of the stream at low water. Mention of the stream as the extent of a boundary which terminates in that direction is sufficient to show a connection between such boundary and the line of low water. This is in accord with the rule declared by our statute. (Rev. Codes, sec. 4529.) In any event, it meets the requirement of the rule that "that is certain which can be made certain by means of the description or references contained in the petition." (Lewis on Eminent Domain, 3d ed., 549.)

Counsel suggests also that the description is insufficient because it does not state the area of each piece taken. The stat-[4] ute does not require the area to be stated. (Sec. 7337.) Its requirement is met when the description is definite enough to identify the land sought to be taken, even though it be conceded that the statement of the area would materially aid in its identification.

The second ground of criticism stated above proceeds upon the idea that under the requirement of the statute that the complaint contain a "statement of the right of the plaintiff," it was incumbent upon the respondent to allege that there is either a present or prospective demand for the electric current which it proposes to produce. It is alleged that the purpose for which the respondent was organized was, among other things, for the construction of an electric power plant by the use of water in the river; that the lands sought to be condemned are necessary for that purpose; that the current so to be generated will be used to supply power for pumping and distributing to and upon lands arid and semi-arid in character, water already appropriated and to be appropriated from the river for the benefit of all persons who shall desire to purchase and use the same; that it is also to be used for the purpose of aiding in the operation of industrial and commercial enterprises in the county and state, and to furnish heat, light and power to the public generally, *etc.*   This, we think, is sufficient under the decision in *Helena Power Transmission Co.* v. *Spratt*, 35 Mont. 108, 10 Ann. Cas. 1055, 8 L. R. A. (n. s.) 567, 88 Pac. 773, to [5] show that the proposed use is a public use, as well as that there is a present or prospective demand for the product of the enterprise.

Counsel cites no authorities to sustain his position. In our opinion, it would discourage, if not altogether prevent, the investment of capital in such enterprises, to declare a rule which would require the plaintiff in every case to allege and prove that its product can be profitably disposed of in the markets of the country. Men invest capital upon the hope and expecta-

tion of profit by disposing of their product, in whatever form, in the markets where others, who are engaged in like enterprises, dispose of their product.   It is not infrequently the case that an enterprise creates its own market by furnishing a product to supply comforts, conveniences and facilities which were theretofore unknown, or, if known, were of inferior quality or were obtained at greater cost.   Whether the founder of a proposed enterprise purposes to enter the market in order to compete for the favor of the public with the owners of other enterprises of the same character, or to furnish a new product which will create a market for itself by supplying a public want not theretofore supplied, is an inquiry which is not determinative of the question whether the enterprise is a public use.   The statute declares what are public uses for which lands may be condemned.   Among these are power plants to provide electric current for sale or for productive use, or to pump water for the purpose of irrigation, or for sale for other useful purposes. (Rev. Codes, sec. 7331; *Helena Power Transmission Co.* v. *Spratt, supra.*)   It is sufficient to make out a case if the allegations of the complaint disclose that the plaintiff is one of the agencies through which the state has chosen to exercise the power of eminent domain, and that the use to which the property sought to be taken is one of the public uses enumerated in the statute.   This is what is meant by the requirement that the complaint must contain a statement of the right of plaintiff.   It wouid be absurd to lay down a rule which would require a railroad company to show that it has a present or prospective market for its potential carrying capacity, as a condition precedent to the exercise of its right to acquire a right of way.   So, also, it would be impossible for a mining company seeking to acquire a right of way for a road to its mine or smelter, or land for a dumping ground for its tailings or refuse matter, to show that it could find a demand in the markets of the world for its mineral product.

3. Several of appellants' assignments question the propriety [6]  of the court's rulings in admitting and excluding evi-

dence. We find no error in any of them. Much of the evidence related to the practicability of the plan adopted by the plaintiff for the installation of its plant, and kindred questions which could not in any way aid the jury in ascertaining the amount of damages to which the appellants were entitled—the only inquiry which was before the court for determination. The complaint in this behalf amounts to nothing more than that the court did not permit the appellants to introduce other evidence of the same character, and thus further confuse the issue to be submitted to the jury.

4. There is no basis for the contention that the evidence is insufficient to justify the several verdicts. Upon the assumption [7] that all the evidence introduced by the appellants upon the question of damages was competent, the most that can be said of it as a whole is that it presents a substantial conflict, and that the finding of the jury in each case is well within the extremes fixed by the different witnesses. This being so, and the court having approved the findings of the jury by denying appellants' motion for a new trial, we must accept the result as conclusive. (*Helena & Livingston Smelting & Reduction Co.* v. *Lynch*, 25 Mont. 497, 65 Pac. 919; *Yellowstone Park R. R. Co.* v. *Bridger Coal Co.*, 34 Mont. 545, 115 Am. St. Rep. 546, 9 Ann. Cas. 470, 87 Pac. 963.)

The several judgments and orders are affirmed

*Affirmed.*

MR. JUSTICE HOLLOWAY and MR. JUSTICE SANNER concur.