THE STATE OF MONTANA, STATE HIGHWAY COMMISSION, ET AL., PLAINTIFFS AND APPELLANTS, *v.* HENRY A. PETERSON AND ELVERA A. PETERSON, HUSBAND AND WIFE, ET AL., DEFENDANTS AND RESPONDENTS.

No. 9630.

Submitted February 3, 1958. Decided July 28, 1958.

328 Pac. (2d) 617.

Howard A. Johnson, Keith P. Johnson, Butte, Forrest Anderson, Atty. Gen., Paul Keller, Helena, Keith P. Johnson argued orally, for appellants.

John W. Bonner, Helena, argued orally, for respondents.

MR. JUSTICE CASTLES:

This is an appeal from a judgment for defendants rendered pursuant to a verdict. The lower court proceedings were in eminent domain, after an appeal pursuant to statute by the plaintiffs, from an award of commissioners appointed to assess damages to be paid the defendants as compensation by reason of appropriation of their property for highway purposes. The only question presented is as to the amount to be paid to the defendants by reason of the appropriation.

Upon trial, the jury rendered a verdict, assessing defendants' damage at $7,500 by reason of severance of one piece of property and fixing the actual value of the property taken as follows: One portion containing 2.72 acres in the amount of $2,850, and one portion containing .769 acres in the amount of $750. Judgment was thereupon entered for the defendants in the amount of $11,100.

The land appropriated consisted of two parcels. The southerly portion, embracing .769 acres referred to as the smaller triangle, is situated at the junction of highways Nos. 10 and 91. It is roughly triangular in shape, with the base facing south. It abuts on the old highway, but its frontage thereon is a granite rock face fifteen to twenty-five feet in height, from which the triangle rises on a rapid slope to its apex to the north.

The northerly portion, embracing 2.72 acres referred to as the larger triangle, consists of rocky land with a cover of scattered sagebrush, rising on a slope from east to west, having a depression or drainage area at its easterly end. This larger triangle was appropriated from a tract of land of 8.39 acres owned by defendants and consists of the westerly end of the tract.

The defendants remaining land is 5.67 acres in size, with fairly level terrain, having little gullys running through part of it. Upon this remaining parcel of land, the defendants have a gasoline station and restaurant business. There is a leveled area extending about 400 feet east of the buildings. This remaining tract has frontage on old highway No. 10. The larger triangle appropriated does not have frontage upon the old highway.

The aforementioned old highway No. 10 is a surfaced highway, bordering which the defendants have for years maintained a service station and restaurant. The highway is a two-lane highway bearing two-way traffic. A short distance to the west of defendants' premises, a junction is made with highway No. 91 to points south, Highway No. 10 is an east-west main arterial highway.

The old highway No. 10 was not abandoned and remains just as before the construction of the highway. The likely result was, of course, that the traveling public would choose to travel the new surface and thus travel would be diverted from in front of the defendants' premises to the back and somewhat above the premises. Also, only one-way travel would pass by on the new highway abutting the premises.

The appropriation by the plaintiff State of Montana was

made for the construction of the aforementioned new highway. The new highway encompassed two separate ways, to accommodate one-way traffic and involving approaches to a junction with highway No. 91 north-south. The defendants' remaining land, upon which their business premises rested would have frontage along the new highway right-of-way on the north as well as along the old route, but the frontage on the new highway would be as to only one-way travel.

The only improvements owned by the defendants to be taken were six petroleum storage tanks and a fence which could be readily moved to available land of the defendants. Except for the storage tanks and fence, the defendants' business premises were not molested.

It should be noted that the appropriation of the larger triangle involved the taking of the entire westerly end of defendants' land and did not segregate the remaining land in the sense of dividing off the one remaining portion from the other. The most that can be said is that defendants' land was diminished by 2.76 acres on the westerly end.

The appellants hereinafter referred to as plaintiffs have specified twenty-eight alleged errors. The specifications of error may be grouped as follows:

1. Errors in rejecting the testimony of expert witnesses to establish the value of the land condemned, and damages to the remaining property.

2. Admission of testimony by defendants' witnesses, whom the appellant alleges affirmatively demonstrated their lack of competency and qualifications.

3. Error in granting certain instructions and refusing others.

4. Error in admitting defendants' Exhibit C over objections.

5. Error in overruling plaintiffs' objections to testimony concerning business nature or value, the nature of traffic upon the highway system, the rerouting of traffic, or the question of access by the defendants to the new highway.

Plaintiffs agree that the defendants should be fairly and wholly compensated. The contention of the plaintiffs is

that the damages awarded defendants are far in excess of full compensation for the property taken. In eminent domain proceedings, the jury findings will generally not be disturbed on appeal unless they are so obviously and palpably out of proportion to the injury done as to be in excess of just compensation provided for by section 14, article III, of the Montana Constitution. Yellowstone Park R. Co. v. Bridger Coal Co., 34 Mont. 545, 87 Pac. 963; Interstate Power Co. v. Anaconda Copper Min. Co., 52 Mont. 509, 159 Pac. 408.

A summary will be made of the testimony of some of the witnesses as they pertain to the foregoing grouping of specifications of error.

Plaintiffs' witness Earl Parsons, right-of-way engineer for the State Highway Department, testified that no action has been taken to close the old highway; that such road will be left open in its present location; and that the defendants will have access to the new highway from their remaining property.

Plaintiffs' witness John A. Poole, principal right-of-way agent for the Montana Highway Commission, testified that he has been right-of-way agent for the Highway Commission for a period of eight years; that during all such time part of his duties had been to negotiate for right-of-way, and in that regard to place valuations on properties sought for highway purposes. Poole testified that he had examined property for the purposes of arriving at valuations in thousands of individual parcels all over the State of Montana. He testified that he was familiar with the value of the property in question, through his experience, as well as his investigation of property values in Silver Bow County. He also testified that defendants' remaining land was the same type as the larger triangle and could be easily leveled, and placed a value on the smaller triangle of $40 an acre for a total of $30.76.

The court sustained defendants' objections to Poole's testimony on the value of the larger triangle. Plaintiffs offered to prove by the witness Poole that the value of the land sought to be taken does not exceed $40 per acre.

Poole further testified that in his opinion no damage was done to the remaining tract of land by reason of severance therefrom of the larger triangle.

Plaintiffs' witness Walsh testified that he is a plumbing and heating contractor in Butte, experienced in the various items of plumbing work, including removal of plumbing objects; that the cost of removing the defendants' gasoline tanks from the larger triangle to the point on defendants' ground, including the cost of reconnecting the tanks and placing them on similar bases to those now under them would be $460. He testified that the tanks would be moved to a position in which they would still be accessible for use, with the defendants' filling station.

Plaintiffs' witness Baxter testified that he has been a right-of-way agent for the Montana Highway Commission since July 1950, and before that was right-of-way agent for the Montana Power Company; that he is experienced in appraising, purchasing and negotiating for property with extensive experience in buying property, including property in Silver Bow County; that he is familiar with property values in Silver Bow County from checking records of sales and talking to realtors, as well as his own experience in that county. Baxter's testimony with respect to the value of the land in question was excluded by the court on the grounds that he had not shown himself qualified to testify to values of real estate in Silver Bow County although he testified that by comparison with similar land elsewhere in the state, it appraised at less than $10 per acre.

Plaintiff's witness Olds testified that he is a real estate man in Silver Bow County and has lived there nearly all his life; that he had sold property similar to that in question here; that the value of the larger triangle $97.20 computed at $35 per acre and the value of the smaller $7.69, which would be $10 per acre.

Plaintiffs' witness Genzberger testified that he had sold approximately six acres immediately across the existing highway from the defendants' service station for $500; that the price was about $83 per acre; that the sale was on time because he did not have clear title; that the purchase price was to be paid

in full when he had succeeded in clearing the tile; that he would have asked the same price for a cash sale; that he had recently sold land to the State of Montana, but his testimony as to the sale price was excluded by the court, as was his testimony concerning any threat of condemnation, even though he testified that the land was not sold for a lower price than would have been asked because of the fact that it was sought for highway purposes under possibility of condemnation.

Plaintiffs' witness Murray testified that he is a professional real estate appraiser and broker, a member of the American Institute of Real Estate Appraisers, graduate of Montana State College, with special appraisal work at the Universities of California, Utah and Nebraska; that he has had extensive experience in real estate appraisal work of all kinds, and has previously appraised property in Silver Bow County; that he appraised the larger triangle at $85 per acre, the smaller giving it the benefit of the doubt, at $8 per acre; and that there would be no damage to the remaining tract by reason of severance of the larger triangle. On cross-examination, Murray was asked, over plaintiffs' objection, whether he had considered how long the defendants had been operating the gas station, including an element of business value which is not within the issues of this action.

The witness Parsons testified over plaintiffs' objections, concerning defendants' access to the new highway. The only apparent purpose of which questioning seemed to be to attempt to establish damage by loss of business.

Defendants' witness Spangler was permitted to testify as to his opinion of the value of defendants' land on the basis of sales of land previously made by him. His testimony showed that such land was not similar to the land in question. On cross-examination, he testified that he did not know how much of the defendants' land joined the old or existing highway, and that he had not studied the map.

Defendants' witness William H. Peterson testified, over objections, concerning the defendants' service station and business

operation on land not taken by the plaintiffs, and concerning his impressions of defendants' access from their place of business to the new highway. His entire testimony should have been excluded, since its purpose was to establish damage by reason of relocation of the highway as will be discussed later.

Defendants' witness Murphy testified, over objection, as to the defendants' service station and business. His testimony showed that he had no personal knowledge of property values but his estimate of the value of defendants' entire business set up, including service station and restaurant, was admitted over objection. It is clear that the witness Murphy was talking about business value of the going business and how it would be affected by a diversion of traffic.

Defendants' witness Simms also was permitted to testify concerning the business value of the property as it would be affected by the diversion of traffic.

One of the defendants, Henry A. Peterson, testified on his own behalf, describing, over objections, the transactions under which he acquired the property in question, as well as considerable other property, the character of and his investment in the improvements of the land not taken by the plaintiffs. Over objection he testified concerning an offer he had received apparently for the service station, restaurant and all the surrounding land. In attempting to show damages by reason of the severance of the larger triangle, he testified that he had a small amount of plumbing extending into the land taken, consisting of a four inch tile waste line extending twelve to twenty feet into the larger triangle, but did not know the value of the line; that he had certain gasoline tanks on the right-of-way, but could only speculate as to costs of removal; that his fence was partially on the large triangle, but he did not know the cost of removal or replacement, and stated ''that's hard to estimate that; those are things that you have to get a price on from a contractor.'' Defendants introduced no testimony of any contractor.

The same defendant was permitted to testify that his remain-

ing property would be decreased in value by reason of lack of access to the new highway; that his only business would be from close friends who would come to the station in spite of inconvenience; and that "the average tourists wouldn't," although he acknowledged that his access to the present or old highway would not be interfered with.

Without attempting to detail all the testimony, it may be said that throughout their testimony appeared the reasoning that the defendants would be damaged by loss of trade by reason of relocation of the highway.

All the foregoing evidentiary matters are included in the first two groupings of appellants' specifications of error.

R.C.M. 1947, section 93-9912, subd. 2, provides that the landowner is entitled to "damages * * * to the portion not sought to be condemned, by reason of its severance from the portion sought to be condemned, and the construction of the improvements in the manner proposed by the plaintiff."

In their brief, respondents say, "Here respondents did not nor do they now claim loss to their business by reason of the taking of part of their lands by appellants."

The first two grouped specifications or error will now be ▉▉▉ considered. As shown in the previously set out summation of the witnesses' testimony, Poole and Baxter testified they had been engaged in the process of appraising real estate for some time all over the state, and had extensive experience in and knowledge of real estate values in Silver Bow County and elsewhere. Their testimony should have been admitted by the court for the purpose of establishing value of the property taken by the plaintiff.

In Montana Ry. Co. v. Warren, 6 Mont. 275, 12 Pac. 641, 642, this court said: "The well-settled rule of law is that value of real estate may be proved by witnesses other than experts." and "A witness as to value of property need not to have been engaged in buying or selling the same."

The defendants assert that the record clearly shows that these witnesses were strangers to defendants' property and had

no idea of the value of property in the county. Any fair reading of the record does not bear this contention out.

Who are competent to give opinions on value of property is ██ generally in the discretion of the trial judge. It must appear that the witness has some peculiar means of forming an intelligent and correct judgment as to the value of the property in question beyond what is presumed to be possessed by men generally. Lewis, Eminent Domain, section 656, page 1127 (3rd ed.). One who knows the real property in question and is familiar with the uses to which it may be put, may testify as to its market value. The witness need not know of any sales and he need not be a technical expert. See Montana R. Co. v. Warren, supra, (affirmed) 137 U.S. 348, 11 S. Ct. 96, 34 L. Ed. 681; Wichita Falls & N.W. Ry. Co. v. Harvey, 44 Okl. 321, 144 Pac. 581; San Diego Land & Town Co. v. Neale, 78 Cal. 63, 20 Pac. 372, 3 L.R.A. 83; City of Tulsa v. Creekmore, 167 Okl. 298, 29 Pac. (2d) 101, 103; Portland & Seattle Ry. Co. v. Skamania Boom Co., 59 Wash. 191, 109 Pac. 814; Idaho-Western Ry. Co. v. Columbia Conference, 20 Idaho 568, 119 Pac. 60, 62, 38 L.R.A., N.S., 497; Wilson v. Pacific Power & Light Co., 171 Wash. 232, 17 Pac. (2d) 846, 847; Lewis, Eminent Domain, section 654, page 1118, section 656, page 1127, section 685, page 1175 (3rd Ed.).

The foundation laid for the two witnesses demonstrated that they had particular and peculiar means for forming an intelligent and correct judgment as to the value of the property. It was error for the trial court to exclude the testimony of these two witnesses.

We do not feel it necessary or advisable to attempt to analyze ██ each part of the testimony of witnesses for the defendants, but on a new trial all evidence as to loss of business by rerouting of the highway should be excluded.

Questions relative to revenue produced from the property ██ taken is undoubtedly admissible for the purpose of arriving at the market value of the property. Where sales are in process of being made, income could become an important fac-

tor in arriving at market value. In all cases where a seller is ready and willing to sell, and a purchaser is ready and willing to buy, and involving sales of hotels, bars, cafes, garages, farms, service stations, stores and the like, a purchaser naturally wants to know something about gross income, gross expenses and net profits before buying. Therefore, in condemnation proceedings, such evidence is admissible for the purpose of arriving at the market value for such is a circumstance, but not a conclusive circumstance, to be shown on an issue of value. In many cases involving the taking of agricultural lands, evidence of revenue is considered for the purpose of arriving at market value. See City of Cushing v. Pote, 128 Okl. 303, 262 Pac. 1070; 22 C.J., Evidence, section 128, page 181; 31 C.J.S. Evidence, section 182; Weyer v. Chicago, Wisconsin & Northern Ry. Co., 68 Wis. 180, 31 N.W. 710, 712; Spokane Cattle Loan Co. v. Crane Creek Sheep Co., 36 Idaho 786, 213 Pac. 699; St. Louis Smelting & Refining Co. v. Henke, 7 Cir., 1922, 277 F. 665; Lewis, Eminent Domain, section 727, pages 1271, 1273, 1274 (3rd ed.).

The final test is the market value of the property being condemned. If improvements on the property enhance the market value then the value of those improvements is material; if improvements do not enhance the market value, they are not material.

The true rule seems to be, for the witness to testify as to the nature of the improvements, their use, and then, probably, state that the improvements enhance the market value of the land. He may then testify as to the consideration of the improvements and their condition and value at the time of the condemnation. Testimony as to the amount or amounts invested in the lands and improvements would be incompetent, for it is the value of all such at the time summons is served that counts.

This evidence is not received as independent evidence of value; it is received simply as evidence reflecting upon market value, and from it that final fact, with the other evidence introduced, may be found. See 20 C.J., Eminent Domain, section

388, pages 985, 987; 29 C.J.S. Eminent Domain, section 273; Ranck v. City of Cedar Rapids, 134 Iowa 563, 111 N.W. 1027; Matter of City of New York, 198 N.Y. 84, 91 N.E. 278, 41 L.R.A., N.S., 411; Beals v. Inhabitants of Brookline, 245 Mass. 20, 139 N.E. 492; City of Los Angeles v. Klinker, 219 Cal. 198, 25 Pac. (2d) 826, 90 A.L.R. 148; 20 C.J., Eminent Domain, section 247, page 799; 29 C.J.S. Eminent Domain, section 175; 10 R.C.L. 142; Joint Highway Dist. No. 9 v. Ocean Shore R. Co., 128 Cal. App. 743, 18 Pac. (2d) 413; see notes 41 L.R.A., N.S., pages 411, 412, 413; State v. Doom, Tex. Civ. App. 1925, 278 S.W. 255; Campbell v. City of New Haven, 101 Conn. 173, 125 A. 650; Anchor Realty Co. v. New York Central Rd. Co., 47 Ohio App. 319, 191 N.E. 830: Burke v. Pierce, 3 Cir., 1897, 83 F. 95.

Testimony such as was offered by plaintiffs' witness, Mike Walsh, and received by the court concerning the removal of gas tanks, was wholly incompetent. Nowhere in the sections of the Montana Codes on Eminent Domain can it be shown that on condemnation the landowner must remove his buildings or fixtures from the land taken and accept an amount of money to defray the costs of such removal.

"Fixtures upon the property taken must be valued and paid for as part of the real estate, and any depreciation in the value of fixtures upon the part not taken is to be taken into consideration, the same as damage to the soil itself." Lewis, Eminent Domain, section 728, page 1276 (3rd ed.).

"Where land is condemned for public uses, the value of buildings or other improvements and fixtures on the land must be considered in determining the owner's compensation." 20 C. J., Eminent Domain, section 247, page 799; 29 C.J.S. Eminent Domain, section 175.

"When fixtures become part of the realty, if the land on which the building stands is taken in whole or in part for the public use, the owner is entitled to have the fixtures considered in determining the amount of his compensation." 10 R.C.L., section 124, page 142.

Here it would seem in some way by underground conduits, or otherwise, gasoline was conveyed from the storage tanks on the new highway to the pumps serving cars, trucks, etc. Under the circumstances here shown, it would seem the storage tanks and service pumps might be considered as one unit and a part of the real property.

In City of Los Angeles v. Klinker, supra, 219 Cal. 198, 208, 25 Pac. (2d) 826, 831, 90 A.L.R. 148, the court said:

"'* * * Treating the question of fixtures, the court [in Banner Milling Co. v. State, 240 N.Y. 533, 148 N.E. 668, 41 A.L.R. 1019, 1020] held that the plant as a unit should be considered, using the following language: ' "The claimant is entitled to recover the value of its physical property as it existed at the time of the appropriation. That does not mean that its value is to be arrived at by taking the value of the various elements and items making up the property separately, and considering them without reference to each other, and then adding together these sums. The claimant is entitled to compensation, not merely for so much land, so much brick, lumber, materials, and machinery, considered separately; but, if they have been combined, adjusted, synchronized, and perfected into an efficient functioning unit of property, then it must be paid for that unit, so combined, adjusted, synchronized, and perfected, as it existed at the moment of appropriation. In that limited sense, it is entitled to the 'going value'—if such a term is permissible — of its physical property. In fixing the amount of award we will be guided by that principle".' "

The third grouping of specifications of error includes three instructions given over objections by the plaintiffs, and one instruction offered by the plaintiffs which was refused. The instructions are as follows:

Instruction No. 11: "You are instructed, that just compensation for the taking and damage of the property means the payment of such a sum of money as will make the defendants whole, so that, upon the receipt by the defendants of the compensation and damages awarded, the defendants will not be poorer

or richer by reason of their property having been taken or damaged.''

Instruction No. 16, in part: ''You are instructed * * * you may consider as elements of damage everything arising out of the construction, maintenance and operation of said road over the lands involved which would naturally tend in any way to depreciate the value of the lands not sought to be condemned and taken for said roads, so far as the evidence may show them to exist.''

Instruction No. 17, in part: ''You are instructed * * * in determining such actual value for the land actually taken and damages to the remaining portion of the land not taken, if any, you may consider how the highways proposed to be constructed by plaintiffs will interfere, if at all, with the access from the portion not sought to be condemned, by reason of its severance from the portion sought to be taken.''

Instruction No. 35 refused: ''You are instructed that the defendants may not be compensated for the relocation of a highway, although such relocation diverts traffic from their door and diminishes their trade and thus depreciates the value of their land.''

Mere technical defects in instructions, if considered as a ▮ whole, do not render errors in instructions reversible error. However, to properly understand the import of the foregoing instructions, it is observed that slicing through the entire conduct of the defendants' case is the theme, ''they are running him out of business.'' This quoted statement was made by counsel for the defendants early in the case. In their brief, the defendants say, ''Here [defendants] did not nor do they now claim loss to their business by reason of the taking of part of their lands by appellants.'' The defendants, throughout the trial, introduced testimony over objection as to the business value of their business conducted on the remaining land not condemned, and their alleged injury by reason of the fact that the highway would no longer bring the general public to their door for private business.

It is clear that compensation cannot be had for loss of business by relocation of the highway and diversion of traffic. In State v. Hoblitt, 87 Mont. 403, 411, 288 Pac. 181, 184, this court said:

"The owner of land abutting on a highway established by the public has no property or other vested right in the continuance of it as a highway at public expense, and, at least in the absence of deprivation of ingress and egress, cannot claim damages for its mere discontinuance, although such discontinuance diverts traffic from his door and diminishes his trade and thus depreciates the value of his land. [Citing cases.]" To the same effect are State ex rel. Johnson v. Board of Com'rs of Deer Lodge County, 19 Mont. 582, 49 Pac. 147, and State v. Bradshaw Land & Livestock Co., 99 Mont. 95, 43 Pac. (2d) 674.

The same principle was stated in State Highway Commission v. Humphreys, 58 S.W. (2d) 144, 145, by the Texas Court of Civ. App. (1933) quoting from the Kansas case of Heller v. Atchison, T. & S. F. Ry. Co., 28 Kan. 625, as follows: " 'The benefits which come and go from the changing currents of travel are not matters in respect to which any individual has any vested right against the judgment of the public authorities'. If the public authorities could never change a street or highway without paying all persons along such thoroughfares for their loss of business, the cost would be prohibitive. The highways primarily are for the benefit of the traveling public, and are only incidentally for the benefit of those who are engaged in business along its way. They build up their businesses knowing that new roads may be built that will largely take away the traveling public. This is a risk they must necessarily assume."

The record reveals that there is no showing that the remaining land not condemned is not adequate to conduct defendants' business on. It should also be borne in mind that there is no separation of parcels of property involving the right of access between parcels. It is not the severance of the property taken which causes any change in the defendants' access or ingress and egress; but rather the construction of a new road.

Referring back to the Instruction Nos. 11, 16, and 17, it appears that the jury could be misled by their incompleteness and speculative nature so that they might consider matters of business value rather than the value of the land itself. Instruction No. 17 is misleading in its provision that the jury might consider how the highway proposed to be constructed would interfere with access. It appears that there was considerable confusion in the trial court and by counsel for respondents between access to the new highway and the right of ingress and egress to the respondent's property. Nowhere in the record does it appear that the defendants' ingress and egress will be changed in any particular from what it always has been. The land not taken has exactly the same ingress and egress, with the added frontage on the new highway. The land taken never did have frontage on the old highway.

Particularly, in view of the giving of Instructions Nos. 11, 16, and 17, it was error for the court not to give Instruction No. 35.

The fourth grouping of errors is defendants' Exhibit C, introduced over objection. Exhibit C was a map of part of the area involved, but upon cross-examination it was demonstrated by the engineer who prepared it that it did not accurately portray plaintiffs' Exhibit 1 and defendants' Exhibits A and B, which it purported to do. Although we do not believe that it amounted to reversible error in that it was not likely to be prejudicial error, upon a retrial of this matter the exhibit should not be allowed to be introduced without a full showing of accuracy and completeness.

The fifth grouping of errors concerns the admission of testimony concerning business nature or value, the nature of traffic upon the highway system or the question of access to the new highway.

This case involves the taking by the state of private property for public use. R.C.M. 1947, section 93-9901, provides: "Eminent domain is the right of the state to take private property for public use. This right may be exercised in the manner pro-

vided in this chapter." The chapter referred to embraces sections 93-9901 to 93-9926, inclusive.

R.C.M. 1947, section 93-9913, provides: "For the purpose of assessing compensation and damages, the right thereto shall be deemed to have accrued at the date of the summons, and its actual value at that date shall be the measure of compensation of all property to be actually taken, and the basis of damages to property not actually taken, but injuriously affected. If an order be made letting the plaintiff into possession, as provided in section 93-9920, the compensation and damages awarded shall draw lawful interest from the date of such order. *No improvements put upon the property, subsequent to the date of the service of summons, shall be included in the assessment of compensation or damages.*" Emphasis supplied.

It will be observed that "improvements" upon property are a part thereof, for, the statute excludes improvements put upon the property subsequent to the date of service of the summons.

Further, as was said in State v. Hoblitt, supra, 87 Mont. 403, 413, 288 Pac. 181, 185:

"The 'actual value' is the market value, 'the price that would in all probability result from fair negotiation, where the seller is willing to sell and the buyer desires to buy.' Northern Pac. & Mont. Ry. Co. v. Forbis, 15 Mont. 452, 39 Pac. 571; Maxon v. Gates, 136 Wis. 270, 116 N.W. 758, 765.

"The owner has the right to obtain the market value of the land, based upon its availability for the most valuable purpose for which it can be used, whether so used or not (Montana Ry. Co. v. Warren, 6 Mont. 275, 12 Pac. 641) * * *"

To arrive at the market value, many factors, in addition to some of those shown in the trial of this case in the court below, may be taken into consideration. Evidence may be introduced as to the various uses to which the property is adapted, even though it has never been put to such use in fact. In this connection the location of the land, the character of the neighborhood, and all things surrounding the property may be shown as all are matters which a purchaser would consider in attempt-

ing to ascertain the market value. Here, it must be borne in mind the ultimate inquiry is the market value. To arrive at the market value, however, it is always proper to introduce evidence as to the uses to which the land may be put, as well as the uses to which it has been put, for a witness to detail its adaptability for a particular use, and then to state its market value. The use is not the market value. However, the use should be considered in arriving at the ultimate inquiry, the market value itself. On this point invitation is made to a reading of the following citations, viz.: Sweeney v. Montana Cent. Ry. Co., 25 Mont. 543, 65 Pac. 912; Montana Ry. Co. v. Warren, supra; Northern Pacific & Montana Ry. Co. v. Forbis, 15 Mont. 452, 39 Pac. 571; State v. Hoblitt, supra; Ranck v. City of Cedar Rapids, supra; Kansas City, O. L. & T. Ry. Co. v. Weidenmann, 77 Kan. 300, 94 Pac. 146; 10 R.C.L. 130; Boom Co. v. Patterson, 98 U.S. 403, 408, 25 L. Ed. 206, 208; Emmons v. Utilities Power Co., 83 N.H. 181, 141 A. 65, 58 A.L.R. 788; Thompson v. State of New York, 204 App. Div. 684, 198 N.Y.S. 590; Wetmore v. Rymer, 169 U.S. 115, 18 S. Ct. 293, 42 L. Ed. 682; Lewis, Eminent Domain, section 706, page 1227 (3rd ed.), will prove enlightening.

As previously discussed testimony as to the loss of business because of rerouting of the traffic cannot be considered as a measure of damages. It does seem from the record that defendants may lose considerable business due to the rerouting. That they will be damaged is to be regretted, but as said in, Elliot on Roads and Streets, section 298, page 359, "There are many injuries resulting from the opening of streets and roads for which landowners cannot receive compensation." Elliot v. Ely, Tex. Civ. App. 1933, 58 S.W. (2d) 839, 842; Mosel v. Real, Tex. Civ. App. 1932, 49 S.W. (2d) 475; 97 A.L.R. 194 note.

Also as previously indicated there is much confusion in the record with regard to access. The evidence and exhibits clearly show that they do have access to the new highway. However, it is true that the access may require some little circuity of travel since it is shown that the grade of the new highway

is from six to sixteen feet above defendants' property. But the fact remains that the former highway remains just as it was before and defendants' easement of access is not interfered with or in any way damaged. Stripped of misleading arguments and statements, defendants' claim for damage to the remaining property is nothing more than damage by reason of diversion of traffic from their door and resulting loss to business. This is in the nature of *damnum absque injuria*.

With regard to the smaller triangle, the verdict is clearly contrary to the evidence since no showing of any value other than that testified to by the plaintiffs' witnesses in the amount of not more than $40 per acre. No showing was made of any incident of value the smaller triangle might have by reason of its taking or severance other than the going value of raw land previously described.

Defendants rely on People v. Ricciardi, 23 Cal. (2d) 390, 399, 144 Pac. (2d) 799, 804, and quote from it as follows: "* * * here we do not have a mere re-routing or diversion of traffic from the highway; we have, instead a substantial change in the highway itself in relation to the defendants' property; i. e., a re-routing of the highway in relation to defendants' property rather than a mere re-routing of traffic in relation to the highway. Defendants' private property rights in and to that highway are to be taken and damaged. * * * The court allowed no damages to be predicated on any diversion of traffic from the highway but it did properly allow damages to be based on diversion of the highway from direct access to the defendants' property."

Upon this case defendants seek to support their claim for damages by reason of lack of access to the new highway. The Ricciardi case was decided by a sharply divided court. We are not inclined to follow the reasoning of the majority decision in that case. In a well-reasoned dissent 23 Cal. (2d) at page 423, 144 Pac. (2d) at page 816, of the above case, it was said:

"But the majority opinion adopts a rule, creating a property right never before recognized, without the citation of a single

authority in support of its unique position. As a matter of fact, the law throughout the United States is uniformly to the contrary. For example, in what is probably the most recent case involving the problem, it was held that the owner of property could not recover consequential damages because travelers to and from his premises would have to travel a distance of approximately 2,000 feet farther in order to reach the newly located highway." See also 27 Wash. L. Rev. 111, 3 Stanford L. Rev. 298.

Even the majority opinion in the Ricciardi case recognizes the universal rule that re-routing or diversion of traffic does not result in compensable damage to an owner of property fronting upon the former highway. In the opinion 23 Cal. (2d) at page 399, 144 Pac. (2d) at page 804, the court said: "If traffic normally flowing over that highway were re-routed or if another highway were constructed which resulted in a substantial amount of traffic being diverted from that through highway the value of their property might thereby be diminished, but in such event defendants would have no right to compensation by reason of such re-routing or diversion of traffic. The re-routing or diversion of traffic in such a case would be a mere police power regulation, or the incidental result of a lawful act, and not the taking or damaging of a property right." See also People v. Sayig, 101 Cal. App. (2d) 890, 226 Pac. (2d) 702.

The defendants, respondents herein, urge a cross-assignment of error as follows: The court erred in denying respondents' motion that they be allowed to assume the burden of proof and the privilege of opening and closing the case.

The defendants moved the court that they be allowed to assume the burden of proof and have the privilege of opening and closing the case. The plaintiffs objected and the objection was sustained by the court.

The court in sustaining the objection admitted that the general rule seems to be that the landowner has the right to assume the burden of proof and to open and close the case, but that the general rule does not prevail in Montana.

The case relied upon was Interstate Power Co. v. Anaconda Copper Min. Co., 52 Mont. 509, 512, 159 Pac. 408, 410. In that case, Chief Justice Brantly wrote: "There is a diversity of opinion among the courts as to which party has the right to open and close the trial on the question of damages in this class of cases. Mr. Lewis declares it to be the rule, supported by the great weight of authority, that the owner is entitled to class of cases. The cases on the subject are cited in the note to his text. Lewis on Eminent Domain (3rd Ed.), 645. We are inclined to disagree with Mr. Lewis in his conclusion. But we are not required to examine the cases and announce a rule in this case, for the reason that counsel made no objection to the court's action, stating the grounds thereof, as required by the statute (Rev. Codes, section 6785 [Rev. Codes 1907, now R.C.M. 1947, section 93-5503]), in force at the time the trial was had. But aside from this, if it be conceded that the appellants had the right to open and close, it does not appear, nor does counsel undertake to point out, wherein the appellants suffered prejudice. Counsel is content to rest upon the bare statement that the court denied him the right in question. The course pursued by the court would seem to have been to their advantage rather than the contrary, for it cast upon the respondent the burden of establishing the amount which it must pay appellants, by a preponderance of the evidence. Under these circumstances, appellants' claim that they are entitled to a new trial ought not to be treated with indulgence. Rev. Codes, section 6593 [Rev. Codes 1907, now R.C.M. 1947, section 93-3909]; Copenhaver v. Northern Pac. R. Co., 42 Mont. 453, 113 Pac. 467; White v. Chicago, M. & St. P. Ry. Co., 49 Mont. 419, 143 Pac. 561."

The defendants assert that the Interstate case, supra, does not control since no objections were made. Defendants then contend that the rule should be, "When a case in eminent domain is submitted to a jury, and the only question to be determined is the amount of damages, it has been held, under the rule that the party who must suffer defeat if no evidence be given on either side is entitled to open and close, that the defendant in

such proceeding is consequently entitled to open and close.''
18 Am. Jur., Eminent Domain, section 358, page 1002.

We believe that under R.C.M. 1947, sections 93-9922, and
93-5101, the party upon whom the burden of proof rests is en-
titled to open and close.

In the instant case the only issue is as to compensation. Lewis,
Eminent Domain, section 645, pages 1112, 1113, 1114 (3rd
ed.) reasons as follows:

''The question to be determined is, What is the amount which
the landowner is entitled to receive as just compensation? It is
always a conceded fact that he is entitled to something. The pro-
ceeding is always one to take property or some interest herein,
or to obtain compensation for property which has already been
taken. The fact of the taking implies the right to receive com-
pensation. The party seeking the condemnation concedes the
right to compensation, and is always willing as matter of fact
to pay a certain sum. * * * The real issue is as to whether
the compensation is more than the amount conceded. If this
issue was put in form it would consist of an affirmation on the
part of the landowner that the amount of compensation was
more than a certain sum and of a denial of this affirmation by
the other party. This is always the practical issue between the
parties, and the landowner always in effect maintains the af-
firmative of this issue. Consequently, upon the principle that
he who maintains the affirmative of an issue must assume the
burden of proof, the landowner is entitled to open and close the
case, and this is true no matter whether his position is plaintiff
or defendant.''

We believe this to be the correct reasoning under our statutes.

Of course, it does not always follow that the landowner is
prejudiced by the refusal of the right to open and close. In the
instant case, the trial court, as previously discussed, gave full
and ample opportunity to the landowners to present their case.
However, since this case must be tried anew, on retrial the de-
fendants should be allowed to open and close.

As previously discussed, we find reversible error. The appel-

lants ask that we order judgment entered for plaintiffs at the rate of not more than $40 per acre for the smaller triangle and at the rate of not more than $85 per acre for the larger triangle, and for damages in the amount of $460 for the removal of the storage tanks. However, there is a substantial difference between the values of the lands involved between the plaintiffs and defendants even without considering questions of business loss, and it may be entirely possible that on a retrial of the issue of damages the defendants might produce evidence in a different amount upon which the triers of fact might award a sum different than indicated by the evidence of plaintiffs.

Accordingly the cause is remanded to the district court for a new trial.

MR. CHIEF JUSTICE HARRISON, and MR. JUSTICES ANGSTMAN, ADAIR, and THE HONORABLE JAMES T. SHEA, District Judge, sitting in place of MR. JUSTICE BOTTOMLY, concur.